AARON REID and JOSEPH A. SPRAGUE, Appellants,

*vs.*

WILLIAM B. HIBBARD, Respondent.

APPEAL FROM WASHINGTON CIRCUIT COURT.

When the principal, with full knowledge of all the facts, receives and appropriates the avails of a transaction made on his behalf by his agent, he cannot afterwards be permitted to repudiate the transaction by denying the authority of the agent.

An agreement, on the part of a judgment creditor to receive from the judgment debtor an eastern draft for a less sum in full satisfaction and discharge of the judgment, being executed by the delivery and acceptance of the draft, is valid as an accord and satisfaction.

The court will not interfere by motion to vacate a satisfaction of a judgment, entered on a compromise of the same, the fruits of which were received and retained by the plaintiff with full knowledge, though less than the amount of the judgment had been received on such compromise.

A party cannot be permitted to affirm a compromise in part and repudiate it in part. He cannot enjoy the fruits of the agreement and repudiate the agreement itself.

This was a motion to vacate the satisfaction of a judgment rendered in the District Court of Milwaukee county, in favor of the appellants, Reid and Sprague, against the appellee, William B. Hibbard. The judgment was rendered Nov. 30th, 1847, and on the 7th day of March, 1849, the following satisfaction thereof was filed:

DISTRICT COURT, } ss.
*Milwaukee County,* }

Satisfaction is acknowledged of a judgment recovered against William B. Hibbard, in District Court, in and for the county of Milwaukee, Wisconsin, between Aaron L. Reid and Joseph R. Sprague, plaintiffs, and the said William B. Hibbard, defendant, of a plea of trespass on the case, for one thousand one hundred and fifty-four dollars and forty-two cents, and nine dollars and sixty-eight cents cost. Judgment filed and docketed the thirtieth day of November, A. D. 1847.

GEO. G. BLODGETT, Attorney for Plaintiffs.

MILWAUKEE COUNTY, ss : Subscribed and acknowledged this, the twenty-second day of February, in the year of our Lord, one thousand eight hundred and forty-nine, by me,

BENJ. B. RICHARDS, Notary Public.

This motion was to vacate the above satisfaction, and was filed in the Circuit Court of Milwaukee county, June 8th, 1857. The Hon. Levi Hubbell having been of counsel for one of the parties, the venue of this motion was, on the 31st day of October, 1855, changed to the Circuit Court of Washington county, and at the April term, 1857, was argued and heard upon affidavits.

On the part of the plaintiffs was read the affidavit of the plaintiff, Joseph A. Sprague, which was as follows :

" CITY AND COUNTY OF NEW YORK, ss. Joseph A. Sprague, of said city, being duly sworn, doth depose and say that he is one of the plaintiffs in the above entitled cause ; that heretofore, to-wit : on the thirtieth day of November, A. D. 1847, the plaintiffs recovered judgment, in the above entitled cause, against the defendant herein in this court, which was then the District Court for the Territory of Wisconsin, for the sum of one thousand one hundred and fifty dollars and fifty-two cents damages, and nine dollars and sixty-eight cents costs, and that the said judgment was docketed on the day last aforesaid, in the office of the clerk of this court ; that an execution was issued on said judgment, which was returned by the Sheriff of the said county of Milwaukee, on the          day of unsatisfied for want of goods and chattels whereon to levy, and that no part of said judgment has ever been collected by execution, and deponent also says that George G. Blodgett, Esq., was the attorney of record of the said plaintiffs, and that he so continued until discharged as hereinafter stated, and is fully set forth in the affidavit of James Kneeland hereto annexed ; that the said Blodgett forwarded a letter to the plaintiffs, who then and still reside in the city of New York, dated Milwaukee, Dec. 18, 1848, which was received by due course of mail by said plaintiffs, in the said city of New York, and a copy of which letter is hereto annexed, marked " A "; that immedi-

ately, upon the receipt of said letter, the said Aaron L. Reid, one of the plaintiffs above named, replied thereto, by letter dated New York, January 4, 1849, a copy of which reply is hereto annexed, marked "B"; that the said plaintiffs at no other time, nor in any other manner, gave any directions or instructions to the said Blodgett than as are contained in their last mentioned letter to the said Blodgett, and deponent says that on or about the twenty-seventh day of January, A. D. 1849, the said plaintiffs authorized Mr. James Kneeland, of the said city of Milwaukee, to take the control and direction of the judgment herein, and all matters appertaining thereto, and to take the same out of the hands of the said Blodgett, and to pay him his fees and charges, and dismiss him as the attorney from the suit, and to notify the said defendant that he, the said Kneeland, was the person to treat with in regard to said judgment thereafter.

And the deponent also says that the said Blodgett was never authorized by these plaintiffs, or either of them, to settle the judgment, or to compromise it in any way, than for the full amount thereof, except as is stated in the letter, marked "B"; that the said Blodgett, in violation of the instructions of these plaintiffs, and after he had been dismissed as the attorney of plaintiffs, did enter into a compromise with said Hibbard, for fifty cents on the dollar on the amount of the said judgment, and the said Hibbard also entered into said compromise with the said Blodgett, after he had been notified that said Blodgett was no longer the attorney of these plaintiffs, as is fully set forth in the affidavit of Charles James, hereto annexed, and that the said Blodgett, on receiving at the rate of fifty per cent. on the dollar on said judgment, or the sum of six hundred and twenty-seven dollars and eighty-five cents on the whole, did acknowledge satisfaction of said judgment, and file a satisfaction thereof on the 7th day of March, A. D. 1849, a copy of which is hereto annexed, marked "C."

And deponent says that said Blodgett was never authorized by these plaintiffs, or either of them, to take the said sum of six hundred and twenty-seven dollars and eighty-five cents, in

full satisfaction of said judgments, nor any other sum less than the whole amount of said judgment, except as hereinbefore set forth, nor was the said Blodgett ever authorized or directed by the plaintiffs, or either of them, to enter satisfaction therefor as set forth. And the deponent further says that he is a member of the firm of Reed & Sprague, which firm is composed of the plaintiffs in this suit; that the deponent has had the principal management and control of the judgment in this case, and the subject matter of this suit, and that, for this reason, deponent has more particular knowledge of and relating to such judgment and subject matters, than the said Joseph A. Sprague, and of the matters of fact heretofore stated, and further says not."

(A.)

Milwaukee, Dec. 18, 1848.

REID & SPRAGUE, New York:

Gentlemen—The Circuit Court for this county is now in session. The execution in your favor by William B. Hibbard is returned *unsatisfied* for *want of goods and chattels whereon to levy*. Since the return of the writ, I have called on William Hibbard, but could get no satisfaction from him, though I told him a creditor's bill would certainly follow. I understand that he intends removing himself and family to Michigan in the spring to reside. Yesterday a Mr. Kane called on me and offered *fifty* cents cash on the dollar, for the amount of the judgment and costs, payable the first day of February next. I of course could give him no answer, but refer the proposition to you. You know Hibbard; his debts now amount to about $3000. I am disposed to think the money will come, if you accede to the offer. Allow me to hear from you in the premises, and believe me, gentlemen,

Yours truly,

GEORGE G. BLODGETT.

(B.)

New York, Jan. 4, 1849.

GEORGE G. BLODGETT, Esq., Milwaukee:

Dear Sir—Your favor under date of the 18th ult. came to

hand this morning, and contents noted. In the absence of our Mr. Sprague, we could not consent to take 50 cents from Mr. Wm. Hibbard, but would take 75 cents on the dollar for the judgment and costs, and if you cannot get that, and you see a good prospect for making the whole debt by filing a creditor's bill, and it is not going to cost too much, in case you fail of recovery, we shall say you must exercise your judgment in the matter. We don't want to spend more than we can help in good money for bad. Do you think it is for our interest to accept his offer ? if so, please to inform us, as we think you can judge better about it than we can. We shall be governed, in a measure, by your advice.

I shall expect to hear from you upon receipt of this, in regard to the matter. Yours truly,-

REID & SPRAGUE.

The affidavit of James Kneeland shows that, in pursuance of instructions from Reed & Sprague, he called upon Blodgett at his office at Milwaukee, and informed him that he had been requested by the plaintiffs to act for them in the matter of the judgment, and to take the business out of his hands, and pay his fees and charges. That Blodgett informed deponent that he would make out his fees and hand in the bill; and that he had not done anything about settling the judgment. It was on the 26th day of February, 1849, that deponent called upon Blodgett, and he immediately afterward employed Messrs. Coon & James, as attorneys for plaintiffs, in place of Blodgett.

Chas. James deposes that on the 26th day of February, 1849, having been employed by James Kneeland in behalf of the plaintiffs; he called on the defendant, Hibbard, and informed him that the firm of Coon & James had been employed to collect the judgment, and gave him notice that the former attorney, Blodgett, had nothing further to do with the case, and that the same was to be settled with Coon & James. To which Hibbard replied that he would just as lief settle it with Coon & James as with any body else, and would settle it with them. This interview with Hibbard took place in the evening of the 26th of February, 1849, being the evening of

a benefit given to Mr. Rice, at the theater in the city of Milwaukee.

B. B. Richards (the notary before whom the acknowledgment to the satisfaction piece above was made,) deposed that when the same was presented to him by Blodgett, it was filled out in full, with the date and all written in, and that Blodgett professed to be in very great haste, and he took his acknowledgement and signed the said certificate without noticing the date it bore; but that it was done late in the evening on which Mr. Rice's benefit took place in the month of February, 1849.

The other plaintiff, Aaron L. Reid, also deposed that he never authorized Blodgett to compromise the judgment against Hibbard for less than the amount thereof, or to enter satisfaction thereon except in the manner set forth in the foregoing affidavit of Sprague.

On the part of the defendant, the affidavit of George G. Blodgett, was read.

"George G. Blodgett being duly sworn, doth depose and say that he was the attorney for the above named plaintiffs in the above named cause, and obtained judgment therein; that during the progress of the suit, and before and after the judgment was obtained, he frequently corresponded with the plaintiffs in regard to the condition of their debt, and advised them of the state and condition of the said Hibbard, and in the course of such correspondence, advised them repeatedly that the said Hibbard would pay fifty cents on the dollar for the said demand; that in the course of proceeding to obtain the said judgment, or after it was obtained, deponent saw in the city of New York, one of the plaintiffs, and which one he is now unable to state, and then again informed him of the offer of said Hibbard aforesaid, at which time last aforesaid, which was in the summer or fall of the year 1848, one of the said plaintiffs, and which one he is not able now to state, advised the deponent to act his discretion in regard to making a settlement with the said Hibbard, in discharge of the said judgment, at the sum of fifty cents on the dollar; that before the

Reid et al. vs. Hibbard.

return of this deponent from New York, he was advised by one of the plaintiffs, but which one he cannot now designate by name, he this deponent, was advised and instructed, in case he should settle the said debt short of the full amount thereof, to call upon James Kneeland of Milwaukee, for advice in regard thereto, and was never, at any time, instructed before or after that time, as he has any recollection, not to close and settle the said debt for a lesser sum : and this deponent regarded that he was invested with authority to settle the same at his discretion, if he, this deponent, should be paid fifty cents on the dollar, by the said Hibbard ; that upon the issuing of the execution for the collection of the said judgment, the same was returned *nulla bona*, and afterward, and on or about the twenty-second or twenty-third day of February, in the year 1849, this deponent, on the offer of the said Hibbard to pay to this deponent on on the said judgment, the sum of fifty cents on the dollar, he thought it best to accept the same in full satisfaction and discharge thereof, and did, at or about the time aforesaid, accept the same aforesaid, in full discharge of the said judgment of record in good faith, and upon his best judgment; and did immediately therafter transmit the sum so received as aforesaid to the plaintiffs, in the said judgment against the said Hibbard, and this deponent further saith that in the course of his communication with the said plaintiffs, touching the said judgment against the said Hibbard, the said plaintiffs had referred deponent to James Kneeland, of the city of Milwaukee, for advice in regard to the settlement and liquidation of the said judgment against the said Hibbard, on behalf of the said plaintiffs, and instructed the deponent to act in accordance with such advice of the said James Kneeland ; that before concluding the said settlement and arrangement aforesaid with the said Hibbard, this deponent did call upon the said Kneeland and advise with him touching the same, and at such interview the said Kneeland advised this deponent that it was the best thing this deponent could do to settle the said judgment upon the terms offered by the said Hibbard as aforesaid, to-wit : at the sum of fifty cents

on the dollar; and by his said concurrence, this deponent did thereupon, in good faith, discharge the said judgment, and did transmit the proceeds of said judgment to the plaintiffs, at the city of New York, which he has no doubt they duly received, and did directly thereafter acknowledge the receipt thereof, and from that time until the present time they have not, in any way, form or manner, made to this deponent any objection to the settlement and arrangement aforesaid, or made any protestation against the same; nor have they returned said draft, or in any manner protested against the sufficiency of the same, in satsatisfaction of the said judgment; nor have they, or either of them, intimated to this deponent that they, or either of them, intended to reject the said payment, or disregard the same as a final satisfaction of said judgment. This deponent further says that he hath not, at any time, to the best of his knowledge, recollection or belief, received from the said plaintiffs, or from the said Coon and James, or either of them, or from the said James Kneeland, any revocation, or notice of revocation, of his attorneyship, for and in behalf of the said plaintiffs, or any dismissal from his employment as the attorney of the said plaintiffs in the said cause. This deponent further says that the satisfaction of the said judgment, executed by this deponent against the said Hibbard, was executed on the day the same bears date, to the best of his recollection and belief, and at no other time, and he believes that the whole matter of concluding the settlement of the said judgment and the execution of the satisfaction thereof, occurred on the same identical day.."

The affidavit of the defendant, W. B. Hibbard, was asfollows:

"William B. Hibbard, of the city of Milwaukee, the defendant in the above entitled suit, being duly sworn, doth depose and say, that he has read the several affidavits of Aaron L. Reid, James Kneeland and Charles James, on file in this cause, and that the statement made by Reid in his affidavit, that this deponent settled said judgment after notice of revocation of said Blodgett's authority is untrue, but this deponent

says that the facts in regard to said settlement are as follows:

The deponent, on the 21st day of February, 1849, agreed with said Blodgett for the settlement of said judgment at the rate of fifty cents upon the dollar, and on that day he paid to said Blodgett the sum of two hundred and sixty dollars or thereabouts towards such settlement, upon Blodgett's representation that he was fully authorized to make such compromise; that on the 22d day of February said Blodgett prepared a paper, acknowledging satisfaction of the judgment, and left the same in the hands of Judge Chandler, the father-in law of said Blodgett, to be delivered to deponent, when he should pay the balance ot the sum agreed upon. That deponent made such settlement and partial payment in the full confidence and belief of said Blodgett's authority. That about three days thereafter the said James Kneeland met deponent in Wisconsin Street, near Spring Street Bridge, and told deponent that he was the plaintiff's agent in regard to said judgment, and that I must settle the same with him. Deponent replied to said Kneeland that he had already arranged for the settlement with Blodgett, and told him the terms. Said Kneeland then told deponent he must not pay Blodgett, as he was about going away, and he feared the plaintiffs would never receive it. That the evening after that, said Charles James notified deponent substantially, as the said James states in his affidavit. Deponent replied to said James that he had already settled the matter with Blodgett. Mr. James then said to Deponent in substance; "then you will have to settle it over again." The day following this interview with Mr. James, or immediately thereafter, deponent called upon Mr. Kneeland, and informed him particularly of the arrangement he had made with Blodgett. Mr. Kneeland then told deponent that the reason of his wishing to take the mattter out of Blodgett's hands, was, that he was fearful that Messrs. Reid & Sprague would not receive the avails of the settlement, and by what he said, led deponent to believe that he had no doubt they would be perfectly satisfied with the terms, provided

they received the proceeds, and that if deponent could see to it that a draft was sent to their order, it would be satisfactory. The deponent immediately applied to said Blodgett, and paid him the balance of the amount agreed upon as aforesaid, and told him that he (deponent) desired to see the money remitted, by reason of Mr. Kneeland's suggestions. That the amount paid by deponent was fifty per cent. of the judgment, interest and costs. That said Blodgett deducted therefrom the amount of his charges against Reid & Sprague, and he and deponent went to Samuel Marshall & Co., where Blodgett purchased a draft for the balance. Said Blodgett then wrote a letter to Reid & Sprague, stating the terms of the settlement made with deponent, with his account for services—endorsed the draft, and handed the letter unsealed to deponent, who went with the same to Mr. Kneeland's house on Main Street, and showed the letter and draft to him. Mr. Kneeland read the letter, remarked that he thought Mr. Blodgett's charges were reasonable, and again expressed his belief that the mat-would be satisfactory to Reid & Sprague The deponent left said letter and draft with said Kneeland. That upon the payment to said Blodgett of the balance of said one hundred and sixty dollars as aforesaid, he received from said Chandler said acknowledgment of discharge of said judgment. And further, deponent saith that since that time, and until he was informed of the present application to vacate the discharge of said judgment, did he ever hear any intimation from said Reid & Sprague. said Kneeland, said James, or any other person, of Reid & Sprague's intention not to abide by such settlement, or anything whatsoever on the subject—and further, deponent saith not."

" Daniel H. Chandler, of the city of Milwaukee, being sworn, says that he knows that the above entitled suit was had in charge by George G. Blodgett, as attorney of the plaintiffs in this suit, wherein a judgment had been obtained as against the defendant Hibbard; that sometime in the month of January or February, in the year 1849—the particular time not now recollected by deponent, as respects which month it was—the said

William B. Hibbard, the said Blodgett, and other persons were present, when a compromise was proposed by said Hibbard to the said Blodgett, who was the attorney of the above named plaintiffs; that after considerable conversation had been had upon that subject, a compromise was agreed upon by and between said Blodgett and Hibbard, by which Hibbard was to pay to Blodgett, for the use of the plaintiffs, a certain sum, which was over two hundred dollars, and as deponent believes from present recollection about the sum of two hundred and fifty or sixty dollars, and for the sum so paid, a satisfaction of such judgment was agreed by Blodgett to be given, and was then, or shortly thereafter, executed, and was in the hands of this deponent to await the payment of some part of the stipulated sum, which was not paid at that time; that such sum as was then paid, was by the request of one or the other, or both of the parties, placed in the keeping of this deponent, together with a satisfaction of the judgment, to await a balance to be thereafter shortly paid by said Hibbard, and upon such further payment, deponent was instructed by the said Blodgett to deliver to the said Hibbard the satisfaction piece aforesaid of the said judgment.

That soon thereafter Hibbard did make such payment to deponent, and deponent delivered to him the said satisfaction, and paid the whole sum agreed to be paid as aforesaid to the said Blodgett. Deponent to his recollection, had not at any time, before the payment aforesaid had all been made, heard or known that any other person than the said Blodgett, had any charge or supervision of the said suit, or the collection of said judgment. Deponent further saith that, at the time of making such compromise aforesaid, several persons other than deponent were present, and were advised with by the said Blodgett, and all whom, to the best of deponent's recollection, gave it as their opinion that the arrangement then made would be for the best interests of the plaintiffs, in which opinion this deponent concurred.

Deponent further saith that subsequently to the arrangement of the judgment aforesaid, he saw a letter purporting to have

been written by and in the name of the plaintiff, acknowedging the receipt of the money stipulated and paid by said Hibbard in a draft, and from deponent's best recollection, there was no complaint in said letter on account of the acts of said Blodgett in the settlement of said judgment with said Hibbard as aforesaid."

Upon the hearing of the motion, the court below entered an order overruling and denying the motion, with costs; from which order the plaintiffs appealed.

*Butler, Buttrick,* and *Cottrill* for Appellants.

I. An attorney has no authority, by virtue of his general retainer, to discharge a judgment for less than the full amount of it. Such an act on the part of the attorney, is against the nature and limitation of his trust—and there is no case in which that authority has been adjudged to belong to him. *Jackson vs. Bartlett,* 8 Johns., 361. *Simonton vs. Barrell,* 21 Wend., 362. *Kellogg vs. Gilbert,* 10 Johns, 220, *Crary vs. Turner,* 6 Johns., 51. *Graham vs. Gale,* 7 Cowen, 744. *Lewis vs. Gamage,* 1 Pick., 347.

II. The release in this instance does not comply with the terms of the statute, and cannot therefore upon its face be held available as a full satisfaction of the judgment.

The Territorial Statutes, page 228, sec. 20, provide that the acknowledgment of satisfaction "shall be made before some "Judge of the Court in which judgment was rendered, or before "some Judge of the District Court, or Supreme Court com- "missioner, who shall certify that the party making the same, "was known, or was made known to such officer by competent "proof." And acknowledgment, by the attorney by sec. 21, must be made in the same manner as if made by the party himself.

IV. The satisfaction piece is not under seal, and the consideration can therefore be enquired into. It is not a *record* nor of similar nature with a record and can therefore, unlike a record, be enquired into, even collaterally. *Lownds* vs. *Remsden,* 7 Wend. 37.

The giving and accepting of a smaller sum of money in payment or satisfaction of a larger one due is not a valid discharge, and cannot be pleaded either as payment, or as accord and satisfaction. *Cumber* vs. *Wane*, 1 Sm. Lea. Ca., p. 146.; *Fitch* vs. *Sutton*, 5 East., 126 ; *Dederick* vs. *Leaman*, 9 Johns, 333 ; *Hamson* vs. *Wilcox*, 2 Johns, 448; *Seymour and Minturn*, 17 Johns, 169 ; *Latapee* vs. *Picholier*, 2 Wash. C. C., 180, 184; *Miller* vs. *Holden*, 18 Vt., 337.

*Emmons and Van Dyke* for respondents.

First, the appellants could not in any event avoid the compromise made by Blodgett, without having first paid or tendered back what they had received.

Secondly, that by failing so to do, and by their long silence and inaction, they have wholly ratified and confirmed the act.

The first proposition embodies a principle which, with few exceptions not necessary to be here noticed, is universally true ; that if a party would rescind or repudiate a contract for any cause, whether made by himself or an agent—if he has received anything valuable upon it, and if by the recision or repudiation he would recover back anything he has parted with—he must first return, or offer to return, what he has received. He cannot rescind or repudiate in part, and adopt in part.  By retaining what he has received, he ratifies and confirms the act, or adopts the means by which he received it. *Story on Agency*, p. 295, Sec. 250. The author says : "Another consideration, very important in cases of this sort, is, that the principal cannot, of his own mere authority, ratify a transaction in part, and repudiate it as to the rest. He must either repudiate it as to the whole or none.  *  *  *  It may be added that a ratification once deliberately made, with full knowledge of all the material circumstances, becomes *eo instanti* obligatory, and cannot afterwards be revoked or recalled."

In *Wilson* vs. *Poulter*, 2 Strange, 859, where a party, an agent of a bankrupt, invested £3,000 of the bankrupt's money in India and South Sea bonds, and the assignee in bankruptcy learning of it, seized eight out of the thirty bonds, and then

afterwards sued the agent for the balance of the money invested; it was held that the assignee having taken part of the bonds he had thereby ratified the whole transaction.

*Clark* vs. *Baker*, 5 Met. 452, is very full to the point, that if one would rescind a contract as made without authority, he must return what he has received, and place the other party *in statu quo*.

*Evans* vs. *Wells*, 22 Wend. 324–341, was a case where a claim had been compromised by an agent, who, on receiving the amount offered by the debtor, executed a release in his *own name*. The court held the instrument was not a bar *as a release;* but it was further held, that it was " competent to the debtor for the purpose of establishing an accord and satisfaction, to prove by parol a ratification by the principal, of the acts of the agent, by showing that with knowledge of the facts, he reaped the benefit of the compromise, by accepting in whole or in part, its fruits." The court remarks on page 341:

" This compromise, whether within the authority given and power confided to the agent or not; whether appearing on the face of it to be made by the principals or not; if afterwards assumed and ratified by the principals, would be good. Such ratification would be proved by accepting from Hill the several portions of the money paid by him with knowledge of the stipulation entered into by their agents." 5 Hill 137, *Moss* vs. *Rossie*; Chitty on Cont. 742, 743, (7th Am. Ed.); 1 Met. 547, *Coolidge* vs. *Brigham*; 2 Johns' Cases 424, *Armstrong* vs. *Gilchrist*; 10 Paige 127–130, *Benedict* vs. *Smith ;* 8 Met. Rep. 550.

The judgment was legally discharged of record and they are estopped to disprove it. 7 Wend., 223 ; 1 Cond. Louisiana, 483, 484; 4 Annual Rep., 410; 1 Robinson, 581; 7 Wend., 223.

*By the Court,* SMITH, J. We think it wholly immaterial to enquire whether Blodgett was authorized, in the first

instance, to make the negotiation which was made with Hibbard, because we are of the opinion that the appellants afterwards abundantly ratified it.   They received the avails of the treaty, appropriated them to their own use with a full knowledge of all the facts, and it would be very unjust now to permit them to deny the authority of the agent, and censure him for that which they have profited by, approved and ratified.

But it is contended, that although Blodgett and Kneeland were authorized to compromise the judgment, yet the payment of a less sum than the amount due could not operate as a discharge of the judgment.

Regarding the acts of Blodgett, Kneeland and others, as the acts of the appellants themselves, the whole matter is reduced to a very narrow compass.

The appellants, distrusting Blodgett's fidelity in paying over the money to be received from the appellee, directed that the proceeds of the settlement of the judgment should pass through Mr. Kneeland.   Accordingly the defendant caused a draft to be procured for the amount agreed upon, of Messrs. Marshall & Co., and caused the same to be delivered to Mr. Kneeland.   This draft was received by Mr. Kneeland for the appellants, forwarded by him to them, was received by them, and its proceeds applied to their use, with full knowledge of all the facts and circumstances of the case.   After all this can they repudiate their agreement, especially without returning the draft to the appellee ?   In case an action were brought upon the original judgment in lieu of this motion, could not these facts be pleaded as an accord and satisfaction fully executed and hence valid.   Would not the discharge of the judgment, executed by Blodgett, if it had been executed and delivered by the appellants in person, have been good evidence of such accord and satisfaction ?   We think so.   The evidence, although somewhat conflicting, is sufficient to charge the appellants with all the legal consequences of the acts of Blodgett and Kneeland.   There is strong reason to believe that they did originally authorize the compromise, but at all events there can be no doubt that they ratified the same, accepted the draft

with full knowledge of the circumstances under which it was obtained, realized the proceeds thereof, and applied them to their own use, without one word of dissent. This conduct fixes upon them all the responsibility of the acts of Kneeland and Blodgétt, and puts out of consideration the question of authority in the one or the other.

Nor is it necessary in view of the facts in this case, to consider whether the instrument of satisfaction executed by Blodgett is in strict conformity with the statute. The question is not, whether Blodgett, the attorney had power to enter satisfaction, or whether he did it in due form; but it is whether Reid & Sprague themselves had power thus to satisfy their own judgment, and whether they are to be held bound by their own acts, or acts which they have made their own by unqualified adoption.

Nor is it a question here whether the satisfaction piece executed and acknowledged by Blodgett, was sufficient to authorize the clerk to enter up satisfaction under sections 20 and 21, of chapter 102, of the Revised Statutes. On a careful inspection of the record it does not appear that the clerk ever attempted to make a formal entry of satisfaction in pursuance of said section 20 and 21. He *filed* the satisfaction piece executed by said Blodgett, and the motion is to " vacate the satisfaction *so filed*." We do not perceive how these provisions of the statute have any application to this case. Section 23 of the same chapter, authorizes the party or the attorney, on the payment of a judgment, to acknowledge satisfaction, or to enter satisfaction on the docket without acknowledgment.

We again recur to the sole question to which our inquiry is reduced: Was it competent for the plaintiffs in the judgment after execution had been issued and returned *nulla bona*, to compromise the judgment by receiving a draft on New York for an amount equal to fifty cents on the dollar, and bind themselves to a discharge of the judgment by an acknowledgment of satisfaction like the one before us.

Either this satisfaction is valid and effectual, or it is of no force or effect. If the former, the arrangement having been

made in good faith, no fraud having been alleged or proved, and fully executed, it ought to stand. If the latter, no interposition of the court is necessary. If it be so imperfect that, were it executory in its nature it could not be enforced, it is nevertheless an accord and satisfaction so far completed and executed that the law will not interpose to disturb it, on the application of the plaintiffs who have derived all the advantages they expected from it.

It must be admitted that there is some confusion in the books in regard to the precise doctrine to be observed in cases of this nature, and I only propose to refer to a few, in order to sustain the views just stated, which we believe to be in accordance with the principles adopted in all analogous cases. In *Watkinson vs. Inglesby and Stokes*, 5, J. R., 386, it was held that the delivery to a creditor of stock in trade and debts due the debtor, and accepted by the former in satisfaction, was good in law, as an accord and satisfaction, and might even be pleaded *puis darrein continuance*, and that it made no difference whether the stock brought more or less than the amount due, provided it was received as a full satisfaction.

In the case of *Anderson vs. The Highland Turnpike Co.*, 16, J. R., 86, the defendant was indebted to the plaintiff for work and labor, to the amount of 1,123 dollars and sixty-two cents. Before the referees it was proved that he agreed to receive certificates of their stock, in full of his demand, and was to call at a place designated, and get them. The defendants left the certificates at the place designated. The referees allowed the certificates at par, as an accord and satisfaction, and their award was sustained by the court. The court say: " An accord not executed is no bar to a pre-existing demand ; but if executed by delivering a collateral thing, which is agreed to be accepted as satisfaction,.it is a bar."

Where a debtor gives his promissory note. endorsed by a third person, as a future security for a part of the debt, which is accepted by the creditor in full satisfaction of all demands, it is a valid discharge of the whole debt, and it may be

pleaded in bar as an accord and satisfaction. *Boyd vs Hitch-cock*, 20 J. R., 76. 'Although in this case there was an additional security given, yet the case was put upon the ground of inconvenience to the debtor in procuring it, benefit to the creditor in receiving it, that he had received it and enjoyed its benefits as a satisfaction, and good faith required that the accord executed should stand. See also *LePage vs. McCrea*, 1 Wend., 164, where the same doctrine was held. Here the draft of Marshall & Co. was accepted by Kneeland, with whom Hibbard was directed to deal, in full satisfaction, and by him sent to the plaintiffs, who accepted the same in full satisfaction; upon which they remained satisfied upward of three years, and have never even yet tendered back the draft. Surely the law will not lend its aid to the consummation of such injustice.

In *Brown vs. Feeter*, 7 Wend., 301, it was held that where a judgment creditor had agreed to take lumber in satisfaction of the judgment, and had acknowledged that he had received sufficient to satisfy it, it operated as a satisfaction, and the suing out execution afterward, and selling property thereon, were tortious acts for which the plaintiff was liable. In *Evans et al. vs. Wells and Springer*, 22 Wend.,224, 341, some of the questions involved in this case were pretty fully discussed, and the court held that, where an agent compromised a claim for his principal, and executed a release in his own name, though it was not binding on the principal, *as a release*, yet it was a good bar to the further prosecution of the claim, by the way of accord and satisfaction ; and for that purpose it was competent to prove by parol, that the principal ratified the acts of the agent, by showing that, with full knowledge of the facts, he reaped the benefit of the compromise by accepting in whole or in part, its fruits.

But it would be too tedious to go over all the cases which might directly or indirectly bear upon this question. While there are numerous cases going to show that a debt is not discharged by the payment of a sum less than that which is due, yet I have been unable to find a single case where the creditor has been permitted to hold on to, and enjoy the fruits of, a

*compromise* of his claim, and yet reject the compromise, and further prosecute his debtor.

In the absence of all fraud, and none is pretended here, we think the circuit court did right in refusing to lend its aid to vacate and set aside the acknowledgment of satisfaction of the plaintiffs, voluntarily made, upon a fair compromise, the fruits of which they still continue to enjoy.

The judgment of the Circuit Court is affirmed with costs.