### SANDLIN v. GRAGG et al.

### SAME v. GRAGG.

#### Nos. 2511, 2552.

Circuit Court of Appeals, Tenth Circuit.

Jan. 11, 1943.

Writ of Certiorari Denied April 12, 1943.

See —— U.S. ——, 63 S.Ct. 983, 87 L.Ed. ——.

B. B. Blakeney, of Oklahoma City, Okl., for appellant.

Joseph C. Stone, of Muskogee, Okl. (Charles A. Moon, of Muskogee, Okl., on the briefs), for appellees.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

On June 1, 1927, Freelan Pruitt, a minor, owned an undivided one-sixth interest in a 120-acre tract of land in Seminole County, Oklahoma. On that date, Ollie Dunlap, as guardian of Pruitt, after proper proceedings had therefor, and with the approval of the county court having jurisdiction over the guardianship, executed and delivered to R. S. Norvell an oil and gas mining lease covering Pruitt's one-sixth interest in the tract and reserving a one-eighth royalty to Pruitt. S. S. Orwig acted as attorney for the guardian in the proceedings for the sale.

The seven-eighths working interest in one-sixth of the tract [1] acquired by Norvell, by proper transfers, was vested in C. E. Gragg, A. E. Graham, and Gordon Dovell. Gragg thus acquired a 120/7680ths interest in the seven-eighths working interest in the entire tract. Only the interest

[1] Hereinafter called the leasehold.

thus acquired by Gragg is now involved in this litigation.

All the parties owning interests under oil and gas leases on the 120-acre tract transferred five-eighths of the working interest to the Superior Oil Corporation [2] to induce Superior to test and develop the tract for oil and gas. Superior transferred two-eighths of its interest to Texas parties.

After development had proved that the tract was valuable for oil and gas, Pruitt commenced an action, numbered 15050, in the district court of Seminole County, against Orwig, Graham, Gragg, and Dovell to declare the guardian's lease void as to them. The suit was predicated on the ground that the lease was acquired in the name of Norvell for Orwig's benefit, when the latter was acting as attorney for Pruitt in the sale proceedings.

By its decree entered on January 5, 1932, the state court adjudged that Alice B. Graham, administratrix of the estate of A. E. Graham, deceased, Mary Lou Graham, A. Stauert Graham, Alice B. Graham, individually, Pearl A. Dovell, administratrix of the estate of Gordon · Dovell, Daisy Loree Dovell, Pearl A. Dovell, individually, and C. E. Gragg held title to the leasehold as trustees for the use and benefit of Pruitt, and ordered an accounting of the proceeds derived by them from the leasehold. It dismissed the action as to Orwig. The remaining defendants in No. 15050 appealed from that judgment to the Supreme Court of Oklahoma. On March 27, 1933, the state court entered a further decree in No. 15050 adjudging that Pruitt recover from the estate of A. E. Graham the sum of $37,926.99, from the estate of Gordon Dovell, $2,092.71, and from C. E. Gragg, $20,252.28. The defendants appealed from that judgment to the Supreme Court of Oklahoma. The two appeals were consolidated in the Supreme Court of Oklahoma. Pruitt became of age on December 25, 1931, and was substituted for his guardian as appellee in the Supreme Court of Oklahoma. He died May 19, 1934. Hugh Roff was appointed special administrator of Pruitt's estate with power limited by the terms of the order of appointment to a revival of the action. On April 8, 1935, the district court of Seminole County entered an order in No. 15050 that the action and the judgment rendered therein be revived in the name of Hugh Roff, as special administrator of the estate of Pruitt, deceased. On the application of Roff, as special administrator, an order reviving the action was entered in the Supreme Court of Oklahoma on April 9, 1935. On May 13, 1935, Mattie Wilson, as executrix of the estate of Pruitt, deceased, was substituted as the appellee in the Supreme Court of Oklahoma.

Prior to February 18, 1933, Pruitt conveyed part of his interest to Mattie Wilson and G. L. Sandlin. On February 18, 1933, G. L. Sandlin conveyed the interest acquired from Pruitt to his son, C. W. Sandlin. The latter conveyance was not recorded until long after July 27, 1933, and Gragg had no notice or knowledge thereof.

G. L. Sandlin acted as agent for his son, C. W. Sandlin, in effecting the compromise hereinafter referred to, and C. W. Sandlin, either personally or through his agent, had full knowledge thereof.

Shortly before July 27, 1933, G. L. Sandlin, acting for C. W. Sandlin and Pruitt, reached an agreement with Gragg to compromise the claims of Pruitt under the two judgments recovered in No. 15050 and to perfect Gragg's title to one-fourth of the leasehold. To facilitate the settlement, G. L. Sandlin and Mattie Wilson conveyed to Pruitt all the interest they had acquired in the leasehold. The settlement was consummated at Independence, Kansas, on July 26 and 27, 1933. By written agreement dated July 27, 1933, Pruitt affirmed and confirmed to Gragg an undivided one-fourth interest in and to the oil and gas lease executed by Dunlap, as guardian of Pruitt, and all right, claim, title, and interest of Pruitt in and to such lease, except the interest of Superior, together with all oil and gas theretofore produced or thereafter to be produced therefrom and gave, granted, bargained, sold, and conveyed unto Gragg, his heirs and assigns, an undivided one-fourth, less the interest of Superior, of all oil and gas that had been or might thereafter be produced from such lease, together with an undivided one-fourth interest in and to all machinery, well equipment, and appliances used or to be used in connection with the production of oil and gas from the premises. . The agreement further authorized and directed pipe line companies or other purchasers

---

[2] Hereinafter called Superior.

of oil and gas, theretofore or thereafter produced from the premises, to pay to Gragg one-fourth, less the interest of Superior, of the value of all such oil and gas. It further warranted unto Gragg an undivided one-fourth interest, less the interest of Superior, in and to the oil and gas lease executed by Dunlap. It acknowledged the receipt by Pruitt of $3,250 in cash paid by Gragg. It provided that the remaining $3,250 of the consideration for the settlement should be deposited, with a copy of the agreement, in the Okemah National Bank of Okemah, Oklahoma, and should be paid to Pruitt, when Gragg should be relieved from any claim of liability to Virgil R. Biggers and his associates, by reason of an attorney's lien noted on the petition in No. 15050; that Pruitt should defray all expenses incurred by Gragg in defending any suit or claim that might be asserted or filed by Biggers; that after 90 days, Pruitt, if he so elected, might give to Gragg a bond, with a surety company as surety, conditioned to guarantee Gragg against any loss or expense by reason of any claim asserted or suit filed by Biggers; and that upon compliance with the terms and conditions of the agreement, Pruitt should be entitled to the $3,250 deposited in the bank. The agreement was duly acknowledged.

Pruitt also executed a division order to Superior directing the payment to Gragg of the oil and gas proceeds from a one-fourth interest in the leasehold, less Superior's interest.

On July 27, 1933, Pruitt executed and delivered to Gragg a release and satisfaction of judgment, which recited that in consideration of $6,500 Pruitt acknowledged full and complete satisfaction and payment of the judgment rendered in cause No. 15050 against Gragg, and released such judgment and the lien thereof, in so far as it related to and affected Gragg, and directed the clerk of Seminole County to enter the release and satisfaction of judgment of record.

On July 27, 1933, Gragg and Pruitt executed a stipulation which recited that full and complete payment and satisfaction had been made by Gragg to Pruitt of all claims of Pruitt against Gragg by reason of the subject matter of the litigation, and requested the Supreme Court of Oklahoma to enter its judgment in accordance with the stipulation, quieting the title of Gragg to a one-fourth interest in the leasehold.

It recited that such judgment should not affect Pruitt's claims against the other parties to the litigation.

On the date of the settlement, Gragg paid to Pruitt $3,250. G. L. Sandlin, as agent and attorney for C. W. Sandlin, received one-half thereof.

On March 17, 1934, G. L. Sandlin, by virtue of a power of attorney from Pruitt, executed a bond and delivered it to the Okemah Bank in accordance with the settlement agreement and received the $3,250 deposited by Gragg in the bank. On March 8, 1937, Gragg paid to Biggers the sum of $3,250 and secured a release of the attorney's lien claim. Thus it will be observed Gragg paid $3,250 in addition to the amount stipulated in the settlement.

The Supreme Court of Oklahoma affirmed the judgments in No. 15050. Its mandate was received and filed in the district court of Seminole County on March 23, 1937. On the same day, Gragg filed the release and satisfaction of judgment executed by Pruitt and a release and satisfaction of the judgment as to Gragg executed by Biggers and Criswell. The following day, a notation was made on the judgment docket that the judgments were released by Pruitt, Biggers, and Criswell, in so far as they affected Gragg.

On May 20, 1937, Mattie Wilson, as administratrix of Pruitt's estate, and C. W. Sandlin caused an execution to be issued upon the judgment in No. 15050. On May 25, 1937, Gragg filed his motion to quash and withdraw such execution. On June 10, 1937, the state court sustained the motion and the execution was withdrawn.

On July 12, 1937, Superior commenced this action in which it sought to quiet its title to three-eighths of the working interest acquired under leases from the owners of the 120-acre tract and to determine by an action in the nature of interpleader the ownership of that part of the working interest then in controversy between the defendants, including Gragg on the one hand, and C. W. Sandlin on the other. On December 19, 1940, the trial court entered a judgment quieting Superior's title to three-eighths of the seven-eighths working interest. No appeal was taken from that judgment. Superior was erroneously named as an appellee here.

Thereafter, the action came on for trial between Gragg and C. W. Sandlin. The trial court found the issues in favor of

Gragg and on October 14, 1941, entered a judgment quieting Gragg's title to 120/7680ths of the working interest in the entire tract, and adjudging that C. W. Sandlin had no interest therein; that the judgments in No. 15050 had been fully paid and satisfied and had been released and discharged of record; and that C. W. Sandlin had no right, title, or interest in 120/7680ths of the working interest or to the judgments rendered against Gragg in No. 15050. From that judgment, C. W. Sandlin appealed.

Thereafter, Mattie Wilson, as administratrix of the estate of Pruitt, and C. W. Sandlin, as an alleged assignee of the judgment rendered in No. 15050, filed a motion in No. 15050 to set aside and annul the release and satisfaction of judgment executed by Pruitt and the release and satisfaction executed by Biggers and Criswell. Whereupon, Gragg filed a complaint for ancillary relief in the instant case against C. W. Sandlin and Wilson, as administratrix, wherein he sought an injunction against the prosecution of the motion in No. 15050. From an order granting the injunction as prayed for, C. W. Sandlin has also appealed. The two appeals have been consolidated here.

### No. 2511

■ Counsel for C. W. Sandlin contends that the state court in No. 15050 had exclusive jurisdiction of the leasehold and its profits, that the proceedings in the Federal court interfered with the state court's jurisdiction over the res, and that the Federal court should not have proceeded during the pendency of the state court action. With respect to the interest here involved the action in the state court had come to an end by the satisfaction and discharge of its judgment. Furthermore, by the instrument of July 27, 1933, Pruitt had duly transferred and conveyed to Gragg a one-fourth interest in and to the leasehold, less Superior's interest, and a one-fourth interest in all the oil and gas produced and to be produced therefrom, and Gragg had acquired good title to all of the interest involved in this litigation, which title Pruitt

warranted by the instrument of July 27, 1933. Hence, the proceeding in the Federal court did not interfere with the state court's jurisdiction over the property involved in this litigation.

■ Counsel for Sandlin asserts that the judgment of revivor entered by the district court on April 9, 1935, estops Gragg from asserting the satisfaction and discharge of the judgment. Under the order of appointment, Roff, as special administrator, was without authority to seek revival of the judgment. The order of appointment expressly limited his power to revival of the action and the appeals. If the entry of the order of revival of the judgment in the district court, if valid, would have had the effect of barring Gragg from asserting the satisfaction and discharge of the judgment, the state district court was without jurisdiction to enter such order. In Oklahoma, while a cause is pending in the Supreme Court upon appeal, the jurisdiction of the trial court is suspended and remains suspended until the mandate from the Supreme Court is returned to the trial court and spread upon its records; and while the jurisdiction of the trial court is thus suspended, it is without authority to make any order materially affecting the rights of the parties and any order so made is null and void.[3] The record does not contain the order of revivor in the Supreme Court, but the motion made by Roff in the Supreme Court was to revive the appeals, not the judgments, in the name of Roff, as special administrator, and we must assume, in the absence of a contrary showing, that the Supreme Court's order was in accordance with the motion and within the limits of Roff's order of appointment.

■■ Neither did the affirmance of the judgment by the Supreme Court affect Gragg's rights in the leasehold. Pruitt had effectually conveyed that interest to Gragg and had satisfied and discharged the judgment against Gragg. The payment of the consideration for the settlement and the execution and delivery by Pruitt to Gragg of the satisfaction of the judgment was the last act and the end of

---

3 Short v. Chaney, 66 Okl. 258, 168 P. 425, 426; Wagoner Oil & Gas Co. v. Goad, 136 Okl. 29, 275 P. 1036, 1037; American Inv. Co. v. Wadlington, 122 Okl. 56, 250 P. 802, 803; Ratzlaff v. State, 122 Okl. 263, 249 P. 934, 936; Schichtel v. Turinsky, 148 Okl. 296, 298 P. 879; Board of Com'rs of Rogers County v. Baxter, 113 Okl. 280, 241 P. 752, 755; Dooley v. Foreman, 94 Okl. 163, 221 P. 47, 48. Cf. Zahn v. Obert, 60 Okl. 118, 159 P. 298.

the proceedings as against Gragg and effectually extinguished the judgment.[4] The judgment, in so far as it affected Gragg, having been paid, satisfied, discharged, and extinguished, it could not thereafter be affirmed by the Supreme Court of Oklahoma. There was nothing for the court to exercise its power upon.[5]

It was not essential to enter the satisfaction and release of record in order to render it effectual. 34 C.J. p. 724, § 1116.

On March 8, 1937, Orwig and Gragg prepared and executed an instrument which recited that Gragg was that day settling the claim of "Biggers and his associates" for attorneys' fees in No. 15050 by the payment to them of $3,250, and that Gragg during the lifetime of Pruitt had made settlement thereof with Pruitt and provided that Orwig and G. L. Sandlin should charge the estate of Pruitt with $1,625, and pay the same to Gragg when funds were available from said estate to make, and the probate court had authorized, such payment. After Orwig and Gragg had executed the instrument, G. L. Sandlin inserted the following therein:

"This Memoranda Applies Only to Fees Against Gragg & Dovell Interest, Biggers Firm Having Been Paid in Full as to All Other Claims for Attys Fees. This Memoranda Supersedes and Extinguishes Contract Dated July 27, 1933, Between Freelan Pruitt and C. E. Gragg?"

Gragg objected and protested against such interlineation and did not consent thereto. Clearly, under these circumstances, the unwarranted insertion made by G. L. Sandlin did not bind Gragg nor affect Gragg's interest in the leasehold.

C. W. Sandlin received through his duly authorized agent $4,875 of the amount paid by Gragg. His agent negotiated and fully agreed to the compromise. He now seeks to have the compromise avoided and have vested in him the interest for which Gragg paid $9,750. His claim is wholly void of equity or merit.

Accordingly, the judgment on the merits is affirmed.

### No. 2552

The motion filed by C. W. Sandlin in the state court in No. 15050 sought to cancel and set aside the satisfactions of judgment executed by Pruitt and by Biggers and Criswell, respectively. It in no sense sought to interfere with the Federal court's jurisdiction over the res of the leasehold or over the proceeds derived from oil and gas produced therefrom. It sought no relief respecting that res. At most, it sought to relitigate an issue that had been litigated in the Federal court proceeding. Hence, injunctive relief was prohibited by § 265 of the Judicial Code, 28 U.S.C.A. § 379.[6]

Gragg's remedy was to plead in the state court the judgment of the Federal court as a bar to the relief sought by the motion under the doctrine of res judicata.[7]

We have no reason to doubt that the state court will recognize the validity and effect of the Federal court judgment.

The order granting the injunction is reversed and the cause remanded, with instructions to dismiss the ancillary complaint. The costs in No. 2552 will be assessed against Gragg.

---

[4] Brochier v. Brochier, 17 Cal.2d 822, 112 P.2d 602, 604; Hatch v. Central National Bank, 78 N.Y. 487, 489; Fluegelman v. Armstrong, 59 Misc. 506, 110 N.Y.S. 967, 969; Reid v. Hibbard, 6 Wis. 175.

[5] Little v. Bowers, 134 U.S. 547, 556-558, 10 S.Ct. 620, 33 L.Ed. 1016; Dakota County v. Glidden, 113 U.S. 222, 225, 5 S.Ct. 428, 28 L.Ed. 981; San Mateo County v. Southern Pac. R. Co., 116 U. S. 138, 6 S.Ct. 317, 29 L.Ed. 589; Hatch v. Central National Bank, 78 N.Y. 487.

[6] Toucey v. New York Life Ins. Co., 314 U.S. 118, 137, 62 S.Ct. 139, 86 L.Ed. 100, 137 A.L.R. 967; Southern Ry. Co. v. Painter, Administratrix, 314 U.S. 155, 159, 62 S.Ct. 154, 86 L.Ed. 116.

[7] Toucey v. New York Life Ins. Co., 314 U.S. 118, 129, 62 S.Ct. 139, 86 L.Ed. 100, 137 A.L.R. 967, Note 1.