EDMUND S. HOLBROOK

*v.*

JACOB DEBO.

*Filed at Ottawa June 20, 1881.*

1. LIMITATION—*payment of taxes for seven years.* It is essential to a defence under the Limitation law of 1839, by payment of taxes under color of title, that the full period of seven years intervene between the time of the first payment of taxes and the commencement of the suit.

Syllabus.

2. CONVEYANCE—*inuring of subsequently acquired title.* A deed not purporting to convey an estate in fee simple absolute in the lands, as, where it remises, releases and quitclaims to the grantee, his heirs and assigns, forever, all the right, estate, title and demand whatsoever which the grantor has or ought to have to the property, is not such a conveyance as that an after acquired title of the grantor will inure to the grantee under our statute on that subject.

3. SAME—*inuring of after acquired title by way of estoppel.* If one conveys lands or real estate with a general covenant of warranty against all lawful claims and demands, he can not be allowed to set up, as against his grantee or those claiming under him, any title subsequently acquired, either by purchase or otherwise, but such new title will inure, by way of estoppel, to the use and benefit of his grantee, his heirs and assigns.

4. But where the deed on its face does not purport to convey an indefeasible estate, but only the right, title and interest of the grantor, although the deed may contain a general covenant of warranty, the doctrine of estoppel will not apply so as to pass an after acquired estate to the grantee. The covenants of warranty in a deed are limited and restrained by the estate conveyed on the face of the deed.

5. Where a deed released to the grantee "all such right, estate, title and demand whatsoever" as the grantor had, "or ought to have," in and to the lots, "to have and to hold the above described premises," so that neither the grantor nor his heirs should claim any "title to the premises or any part thereof," it was *held* only a release of such right as the releasor had at the time, and as not purporting to convey the lots. The words, "or ought to have," are unmeaning, and may be rejected. It was also *held,* that the word "premises," in the *habendum,* means only what the deed purports to convey, and not the absolute title.

6. Where a party conveys only such estate and interest as he has in land, the title of which is at the time in the United States, such interest, whatever it may be, will terminate upon the purchase of the land from the United States.

7. COVENANT OF WARRANTY—*limited by estate conveyed.* Where the grant in a deed is of all the grantor's right, title and interest in land, and not of the land itself, or any particular estate therein, a warranty of the *premises* extends only to the estate granted, which is all the grantor's right, title and interest. It will be confined to the estate vested in the grantor at the time the deed was made.

8. EJECTMENT—*deed of trust as an outstanding title.* A deed of trust from the plaintiff in ejectment to secure the payment of a note, with the usual power of sale, but which contains an express provision that the grantee may hold the premises until sale is made, when no sale has been made can not be set up as an outstanding title.

9. TOWN LOTS—*proof of location.* The location of a town lot may be fixed by a witness from common repute, irrespective of any plat.

99   372
206  1589

99   372
208  3 49

99   372
210  7 38
99   372
215  1562

APPEAL from the Circuit Court of LaSalle county; the Hon. JOSIAH MCROBERTS, Judge, presiding.

This was an. action of ejectment, brought by Edmund S. Holbrook against Jacob Debo, in the La Salle circuit court, for lots 3, 4 and 5, of block 65, of that part of the city of Peru known as "the town of Ninawa," or "the Ninawa addition to Peru." A trial was had at the June term, 1878, before the court, without a jury, resulting in a finding and judgment for the defendant.

On the trial the plaintiff, to show title, introduced the following evidence:

1. A patent to Thomas Glenn of the west half of the south-east quarter of sec. 17, town 33 north, range 1 east of the third principal meridian, dated August 1, 1838, and recorded July 27, 1840, in La Salle county records of deeds.

2. A deed by said Glenn to Theron D. Brewster of the same land, dated April 3, 1839, recorded June 22, 1839.

3. A deed by said Brewster to the plaintiff of these lots (and other lots), dated September 24, 1858, acknowledged and recorded.

4. And proof that these lots were a part of said tract of land.

The defendant relied upon two defences: 1st, limitation of seven years, and payment of taxes, before suit brought; and 2d, an outstanding title as against the plaintiff. Under the first he introduced the following evidence:

1. The record of a sheriff's deed for lot 3 (not the others), to Alonzo Edwards, for the non-payment of taxes of 1844— reciting a judgment in 1845—dated February 24, 1848, recorded soon after in book 17, p. 161. Then a deed of said Edwards to Richard Ellis, dated April 16, 1867, and a deed by said Ellis to defendant, dated July 8, 1869.

2. A record of a sheriff's deed of lots 4 and 5 (but not 3) to Morris Neustadt, for the non-payment of taxes of 1864— reciting a judgment in 1865—dated September 14, 1867.

Then a deed by said Neustadt to defendant, dated June 22, 1869.

3. And proved the taking possession of these lots, then vacant, May, 1869; built on them in 1871, and so continued to occupy till now, and the payment of all taxes during the same time, the first tax, 1869, city and county combined, being paid April 1, 1870.

To sustain the second ground of defence the defendant introduced the following evidence:

1. A record of a deed by Theron D. Brewster to Ward B. Burnett of these lots and other lots, dated March 8, 1837, recorded soon after, book "G," p. 280.

2. A like record of a deed by Henry L. Kinney to same party; same property, same date and record.

3. A record of a trust deed by said Holbrook to John H. Ball, as trustee, for lots 4 and 5 (not lot 3), dated October 23, 1861, recorded book 81, p. 607, to secure the payment of a debt in one year's time, with the usual power of sale.

Mr. EDMUND S. HOLBROOK, for the appellant:

The defence, under the Limitation law, is lacking in one essential quality. The first payment of taxes, April 1, 1870, was not seven years before suit, which was March 23, 1877. *Clark* v. *Lyons*, 45 Ill. 388; *McConnel* v. *Konepel*, 46 id. 519.

As to the second defence, outstanding title in another, I reply:

As preliminary, it should be noticed that this defence is one not favored in the law, and the rule of strict construction will obtain. *Den* v. *Sinnickson*, 4 Hal. (N. J.) 149; *Peck* v. *Carmichael*, 9 Yerger, 325.

At law one may have the benefit of the extinction of a title, though he had no equity in its extinction, and when the defendant sets up an outstanding title, the plaintiff may show that it has become extinguished. *Whiting* v. *Butler*, 29 Mich. 124; *Dickinson, Lessee* v. *Collins*, 1 Swan, 516; *Lessee Foster* v. *Joice*, 3 Wash. C. C. R. 498.

As a general rule, no distinction has in any way been taken between a covenant of non-claim and the ordinary covenant of warranty. Both are in general held to have the same operation by way of estoppel, and both equally possess the capacity of running with the land, and confer the same rights as to a recovery in damages. *Kimball* v. *Blaisdell*, 5 N. H. 533; *Evarts* v. *Brown*, 1 D. Chipman, (Vt.) 99; *True* v. *Eastman*, 3 Metc. 121; *Gibbs* v. *Thayer*, 6 Cush. 33; *Miller* v. *Ewing*, id. 40; *Claunch* v. *Allen*, 12 Ala. 163; *Newcomb* v. *Presby*, 8 Metc. 406; *Phelps* v. *Kellogg*, 15 Ill. 131; *Bennett* v. *Waller*, 23 id. 97; *Porter* v. *Sullivan*, 7 Gray, 441; *Lathrop* v. *Snell*, 11 Cush. 453.

The covenants will lose that attributed estoppel (inurement) when it appears that the grantor intended to convey no greater estate than he was possessed of. *Blanchard* v. *Brooks*, 12 Pick. 66; *Gee* v. *Moore*, 14 Cal. 474.

The warranty in a deed applies only to the estate the deed purports to convey, whatever it may be. *Bell* v. *Twilight*, 6 Foster, (N. H.) 411; *Allen* v. *Holton*, 20 Pick. 464; *Ballard* v. *Child*, 46 Me. 152; *White* v. *Brocau*, 14 Ohio St. 339; *Hurd* v. *Cushing*, 7 Pick. 175; *Kimball* v. *Semple*, 25 Cal. 441; *Comstock* v. *Smith*, 13 Pick. 116; *Hoxie* v. *Finney*, 16 Gray, 332; *Bates* v. *Foster*, 59 Me. 157; *Brown* v. *Jackson*, 3 Wh. 452; *Adams et al.* v. *Ross*, 1 Vroom, (N. J.) 504; *Sumner, Admr.* v. *Williams*, 8 Mass. 173.

He who would set up an outstanding title in a third person, must show that it is still a living, effective title, and not barred by the Statute of Limitations, or in any other way ineffectual and void. *Hall* v. *Gittings*, 2 Har. & J. 122; *Jackson* v. *Harder*, 4 J. R. 211; *Jackson* v. *Todd*, 6 J. R. 258; *Lessee Foster* v. *Joice*, 3 Wash. C. C. 498; *Jackson* v. *Scharler*, 7 Cow. 187; *Den Demise Penton* v. *Sinnickson*, 4 Hals. (N. J.) 149; *Greenleaf Lessee* v. *Birth*, 6 Pet. 302; *Peck* v. *Carmichael*, 9 Yerger, 325; *Hunter* v. *Cochran*, 2 Barr, 105; *Dickinson's Lessee* v. *Collins*, 1 Swan, (Tenn.) 516; *McDonald* v. *Schneider*, 27 Mo. 405; *Harvey* v. *Mor-*

*ton et al.* 36 Mi. (7 Geo.) 411; *Griffin* v. *Sheffield,* 38 id. (9 Geo.) 359; *Hoag* v. *Hoag,* 35 N. Y. 473; *Lannan Lessee* v. *Wilson,* 30 Md. 537; *Wade* v. *Thompson,* 52 Mi. 367; *Totten* v. *James,* 55 Mo. 494; *Whiting* v. *Butler,* 29 Mich. 124.

Messrs. G. S. ELDRIDGE, and Mr. H. M. GALLAGHER, for the appellee:

This court can not judicially say that Burnett or his heirs are barred by the Statute of Limitations.

It is said the deed from Brewster to Burnett does not purport to convey title, but is a naked release only. When the granting clause is considered with the *habendum,* it is evident that the deed conveys a fee simple estate. 4 Kent's Com. 5, 6; 2 Blacks. Com. 104, 105.

The clause in the deed from Brewster to Burnett was nothing less than an express covenant, operating prospectively against the grantor and all claiming under him, which run with the land, and was binding upon the plaintiff, as Brewster's grantee, and an effectual estoppel upon the assertion of any claim by him to the premises conveyed. *Brady* v. *Spurck,* 27 Ill. 478; *Claycomb* v. *Munger* 51 id. 373; *Bennett* v. *Waller,* 23 id. 97; *Wadhams* v. *Gay,* 73 id. 415; *Welch* v. *Dutton,* 79 id. 465; *Chicago, Burlington and Quincy Railroad Co.* v. *Chamberlain,* 84 id. 333.

If a grantor conveys by quitclaim, and the estate which he assumed to have was less than a fee, or for some reason becomes extinguished, or he has acquired an entirely new title to the property, it has been held that he may set it up notwithstanding his former quitclaim; but unless it appears that his title, subsequently set up, is in no way connected with the title he assumed to convey, he is estopped, even though he made no covenants. *Jackson* v. *Murry,* 12 Johns. 201; *Jackson* v. *Ball,* 1 Johns. Cas. 90; *Comstock* v. *Smith,* 13 Pick. 116; *Bell* v. *Twilight,* 6 Foster, 401; Coke's Litt. 45, 47; Cro. Cas. 110.

It is true, as stated by the appellant, that seven years' possession had not intervened between the first payment of taxes and the commencement of this suit, but the first payment was made in April, 1870, and the last payment, June 17,1878, after the commencement of suit, the defendant remaining in possession all the time, making eight years' possession and payment of taxes for nine years consecutively. suffered to be made by the plaintiff. It is true, suit has been brought, but if the construction of the 8th section of the Limitation act is that the statute only begins to run from the time of the first payment of taxes, when the letter of the statute is, that " every person in the actual possession * * * who shall, for seven successive years, continue in possession, and shall also, during said time, pay all taxes legally assessed," etc., does not the same strictness of construction of this statute apply against the plaintiff, when he still suffers the payment of taxes by the party in possession to continue after suit brought, so that upon the completion of the payments and possession concurrently, the person in possession should be "held and adjudged to be the legal owner of said lands," etc.?

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action of ejectment, brought March 23, 1877, by Edmund S. Holbrook against Jacob Debo, to recover lots 3, 4 and 5, of block 65, in the Ninawa addition to Peru. There was judgment for the defendant in the circuit court, and the plaintiff appealed.

The tract of land (west half of the south-east quarter of section 17, township 33, range 1 east,) embracing the lots in controversy, was bought from the government by one Thomas Glenn, to whom a patent issued August 1, 1838. On April 3, 1839, Thomas Glenn conveyed the tract of land to Theron D. Brewster, who afterward, on September 24, 1858, conveyed the lots in controversy to Holbrook, the plaintiff.

The defendant, in the circuit court, relied for a defence upon the Statute of Limitations of seven years' payment of taxes, with color of title and possession, and also upon an outstanding title in another.

The first payment of taxes having been made on April 1, 1870, and the suit brought March 23, 1877, there had not been the intervention of full seven years between the time of the first payment of taxes and the commencement of the suit, which, under former decisions of this court, is essential to the maintenance of this defence, so that this first defence clearly fails.

For the purpose of establishing an outstanding title in one Ward B. Burnett, the defendant introduced in evidence the record of a deed from Theron D. Brewster to Burnett, dated March 8, 1837, and recorded August 12, 1837. Plaintiff contends that this deed was not sufficient to establish an outstanding title, for two reasons: first, because Brewster, at the time he made the conveyance to Burnett, had no title, and that the title which he afterward acquired did not inure to the benefit of Burnett; second, because whatever title was conveyed to Burnett was barred by the Statute of Limitations.

The phraseology of the deed from Brewster to Burnett is as follows: "I, Theron D. Brewster, for the consideration of five dollars, received to my full satisfaction of Ward B. Burnett, do, by these presents, remise, release and forever quitclaim unto the said Ward B. Burnett, and his heirs and assigns forever, all such right, estate, title and demand whatsoever as I have, or ought to have, in or to the following described lots or parcels of land, (here describing block 65, and eight other blocks and seven lots,) in the town of Ninawa, or Northwestern addition to Peru. To have and to hold the above described premises unto him, the said Ward B. Burnett, and his own use and behoof, and his heirs and assigns forever, so that neither I, the said Theron D. Brewster, my heirs, nor other person or persons for them, in their name or behalf, shall or will hereafter claim or demand any right or title to

the premises, or any part thereof, but they and every of them shall, by these presents, be excluded and forever debarred."

The deed not purporting to convey an estate in fee simple absolute in the lands, the after acquired title manifestly would not inure to the benefit of Burnett, under our statute in that regard. But it is contended that it did so under and by virtue of the covenant in the deed, and that because of such covenant, Holbrook is estopped from claiming title against Burnett. It is a well settled principle of the common law, that if one conveys lands or other real estate with a general covenant of warranty against all lawful claims and demands, he can not be allowed to set up against his grantee, or those claiming under him, any title subsequently acquired, either by purchase or otherwise. Such new title will inure by way of estoppel to the use and benefit of his grantee, his heirs and assigns. *Comstock* v. *Smith*, 13 Pick. 119. But it is decided in this same case that a covenant in a deed of land that the grantor will warrant the land against all persons claiming under him, does not estop him from setting up a title subsequently acquired by him, by purchase or otherwise.

Mr. Rawle, in his work on Covenants for Title, after laying down the above doctrine, says, on page 420: "There is still another qualification to the doctrine of estoppel being caused by a covenant of warranty, which is, that where the deed does not on its face purport to convey an indefeasible estate, but only 'the right, title and interest' of the grantor, even although the deed may contain a general covenant of warranty, yet in cases where that covenant is held to be limited and restrained by the estate conveyed, and not to warrant a perfect title, the doctrine of estoppel has been held not to apply; in other words, although a warranty is invested with the highest functions of an estoppel in passing, by mere operation of law, an after acquired estate, yet it will lose that attribute when it appears that the grantor intended to convey no greater estate than he was possessed of." Citing various authorities from different States in support of the proposition.

In *Bell* v. *Twilight*, 6 Foster, (N. H.) 411, after quite a full discussion, the court say: "It seems to have been decided in many cases that where the deed of conveyance is of all the right, title and interest of the grantor in the land described, with covenants of ownership, general warranty, good right to sell, etc., the deed in such case only conveys such interest in the land as the grantor has at the date of the deed, and the covenants in the deed are to be regarded as having reference to and as being qualified and limited by the grant."

In *Bogy* v. *Shoab*, 13 Mo. 378, it is recognized as being the rule, that "where the grantor does not undertake to convey an indefeasible estate, but only such title as he has, and agrees to warrant it only against all claims derived from himself, he is understood to refer to existing claims and incumbrances, and not to any title he might afterwards derive from a stranger." And see to the same effect, *Gee* v. *Moore*, 14 Cal. 474; *Allen* v. *Holton*, 20 Pick. 458; *Blanchard* v. *Brooks*, 12 Pick. 46; 1 Vroom, 504.

In the light of these authorities, and many others of like character which might be cited, let us look at this deed from Brewster to Burnett. It releases unto Burnett "all such right, estate, title and demand whatsoever as I have, or ought to have, in or to" the lots, "to have and to hold the above described premises," so that neither Brewster nor his heirs should claim any "title to the premises, or any part thereof." It is a release of such right as the releasor has, in the present tense (or "ought to have," is unmeaning, and may be left out of view,) in certain lots. It does not purport to convey the lots. The *habendum* is of the above described *premises*,—that is, what the deed purports to convey, and the covenant is, that the grantor nor his heirs shall claim the *premises*. Premises, in popular phrase, is sometimes used for land, but "the premises," in the connection in which here used, means that which is conveyed. In *Miller et al.* v. *Ewing*, 6 Cush. 40, where there was a quitclaim deed of all the grantor's right, title and interest in the land, with the clause in the

*habendum,* " so that neither I, the grantor, nor any person claiming under me, shall have, claim," etc., the court say: " Such a clause is undoubtedly a good qualified warranty. But to what does this warranty apply? Obviously to the premises,—that is, the land, estate, or interest, whatever it be, which the deed, in its descriptive part, purports to convey. * * * The warranty is co-extensive with the estate, right or interest which the deed purports to pass."

So in *Blanchard* v. *Brooks,* above cited, the court say: " The grant in the deed is of all his right, title and interest in the land, and not of the land itself, or any particular estate in the land. The warranty is of the premises,—that is, of the estate granted,—which was, all his right, title and interest. It was equivalent to a warranty of the estate he then held or was seized of, and must be confined to estate vested," that being the estate he then held. See, too, *Gibbs* v. *Thayer,* 6 Cush. 32, as to the effect of this covenant of non-claim being a qualified warranty against the grantor and his heirs.

We find, then, that the deed from Brewster to Burnett did not remise, release and quitclaim the lots themselves, but that it was a mere release of whatever interest the grantor had in the lots,—that he did not undertake to convey to Burnett an indefeasible estate, but only such interest as he then had,— that the covenant of non-claim by Brewster was not a general warranty against all claims and demands, but a qualified warranty only against those derived from himself, which, under the authorities, must be understood to refer to existing claims or incumbrances, and not to any title which the grantor might afterwards acquire, by purchase or otherwise, from a stranger. The warranty in the case being only co-extensive with the grant, the grantor was not thereby estopped to claim the title from the United States, which he afterwards acquired from Thomas Glenn. This doctrine of estoppel is applied for the administration of justice, in order that one may have what, according to the understanding of the parties, he bought and paid for.

In *Bennett* v. *Waller*, 23 Ill. 183, this court said: "The reason why a subsequently acquired title is held to pass by a deed containing covenants of warranty, is, that it effectuates the real intent of the parties, which was to convey the true and real title to the land, and to avoid circuity of action and further litigation. It is a principle of equitable jurisprudence adopted by the courts of law," etc. How manifestly inapplicable is the doctrine to the present case. The land, at the time Brewster released to Burnett, had not been bought from the government, and the title was in the United States. Brewster, for the evidently nominal consideration of $5, paid to him by Burnett, releases to the latter such interest as he has in eight blocks of lots containing ten lots each, and in seven lots besides, making eighty-seven lots. Some seventeen months afterward the United States granted the tract of land in which the lots were situated to Thomas Glenn, by patent, and Glenn, some five months after, conveys the tract of land to Brewster. What equity is there that this title to the lots derived from the United States should go over to Burnett because of that former quitclaim of interest by Brewster to him? Would it effectuate the intent of the parties, and was it their intent that the true and real title to the lots was to be conveyed by the quitclaim deed? Clearly not. The parties did not suppose that they were dealing with the title, and it was not that which was bought or sold, in the understanding of the parties. The title was in the United States, and Brewster sold only such interest as he had. That interest, whatever it was, terminated upon the purchase by Glenn from the United States, and Glenn obtained the title by such purchase. Burnett got and enjoyed all that he bargained for or paid for,—namely, Brewster's then interest. This subsequently acquired distinct title from the United States, which Brewster obtained, Burnett never paid for nor bargained for, nor was it at all contemplated by the quitclaim deed that it should pass to Burnett. There is no reason why he should have it, and no equity to base any estoppel on.

As the patent to Glenn recites that he had made payment for the land "according to the provisions of the act of Congress of the 24th of April, 1820, entitled 'An act making further provision for the sale of the public lands,'" it is said Glenn must have made a prior settlement on the land as a pre-emptioner; and the suggestion is made by defendant's counsel, that at the time of the quitclaim deed from Brewster to Burnett there may have been a contract of sale from Glenn to Brewster, of which the deed from Glenn to Brewster was but a consummation. It is sufficient to say that nothing of this kind appears. Courts act only on proof, not conjecture.

This view taken of Burnett's alleged title, renders unnecessary an examination of the other question, as to the bar of such title by the Statute of Limitations.

A further attempt to set up an outstanding title to lots 4 and 5 was by showing a deed of trust from the plaintiff to John H. Ball, trustee, dated October 23, 1861, of said lots 4 and 5, to secure the payment of a note of plaintiff for $400, of even date, payable in one year, with the usual power of sale on advertisement, etc. But the deed contained an express provision, that the grantor might hold and enjoy the premises until sale should be made; and there being no evidence of any sale, the deed of trust evidently fails to show an outstanding title.

Objection is taken that the evidence fails to show the lots in controversy are a part of this eighty acre tract of land patented to Glenn. The witness Raymond testified, that he knew the location of said tract of land, and also of what was called and known as block 65, of the town of Ninawa, and that said block 65 was a part of the said eighty acre tract. All the foundation for the objection is, that on cross-examination the witness said that he could not locate the block by the plat shown, nor could he designate the boundary of the Ninawa addition by the plat, nor could he tell from the plat whether it was on said eighty acre tract or not; and the town,

as appears from the surveyor's certificate attached to the plat, is laid off " on the north fraction of section 20, and part of the south half of section 17, town 33 north, range 1, east of the third principal meridian."

The location of a town lot may be fixed by a witness, from common repute, irrespective of any plat. The direct examination of the witness sufficiently established, at least *prima facie*, the location of the block, and the lots in the block, as being on this tract of land. The cross-examination and the plat showed nothing to the contrary. The objection is without force.

The judgment is reversed and the cause remanded.

*Judgment reversed.*