(No. 22596.

THE TOWN OF KANEVILLE, Appellee, *vs.* LYLE B. MEREDITH, Appellant.

*Opinion filed October 14, 1935—Rehearing denied Dec. 4, 1935.*

A. G. KENNEDY, for appellant.

SHEARER, O'MALLEY & SEARS, (WALTER R. O'MALLEY, and BARNABAS F. SEARS, of counsel,) for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

The appellee, the town of Kaneville, (hereinafter referred to as the complainant,) filed a bill in the circuit court of Kane county against the appellant, Lyle B. Meredith, (hereinafter referred to as the defendant,) for a mandatory injunction commanding him to remove a fence on a certain ten-acre parcel of land along the contiguous highway, or so much thereof as would enable the complainant to remove the gravel therefrom, and for a restraining order enjoining the defendant, his heirs, agents, servants and assigns, from in any manner interfering with it, its highway commissioner, agents, servants or employees, from going upon or moving gravel from the land. By its bill the complainant alleged that it acquired the property for the purpose of using the gravel upon the premises and removing the same therefrom in the construction and building of roads within the township of Kaneville. The complainant further charged that the title of the defendant, while consistent with, was subject to its title and its right to remove the gravel. The defendant answered the bill and filed a cross-bill, by which he claimed title to the property in controversy by recorded deed, by twenty years' adverse possession, and by seven years' possession under claim and color of title and payment of taxes, and prayed that his title therein be quieted. The chancellor heard evidence and entered a decree finding that the complainant was not entitled to the relief sought, dismissed its bill for want of equity, and quieted the title to the property in the defendant. The complainant appealed to this court, and in an opinion filed on February 23, 1933, the decree was reversed and the cause was remanded to the circuit court without directions. (*Town of Kaneville* v. *Meredith,* 351 Ill. 620.) When the cause was re-docketed in the circuit court the defendant filed a supplemental answer averring that since the filing of the complainant's original bill he had continued in open, peaceable and adverse possession

of the property; that since filing his previous answer he had paid all the taxes levied upon the real estate; that the complainant was barred by the Statute of Limitations from commencing its suit, and that he, the defendant, was the owner both under the twenty-year and the seven-year sections of the Limitations act. He also withdrew his cross-bill and re-filed it as of March 1, 1934, claiming that he, himself, had been in possession more than seven consecutive years under claim and color of title and had paid all taxes. The parties stipulated that as to the pleadings the cause should be heard upon the amended original bill, the cross-bill, the answers to these bills, the defendant's supplemental answer and the replications to the answers, and that as to the evidence it should be heard upon the bill of exceptions made up and preserved when the cause was first tried. It was further stipulated that certain additional evidence should go into the record. The chancellor then entered a decree finding, among other things, that the defendant had continued to occupy and cultivate the land and pay the taxes thereon from the day of the filing of the bill, as he had prior thereto. The decree granted the relief sought by the complainant and dismissed the defendant's cross-bill for the want of equity. From that decree the defendant prosecutes this appeal.

The facts, so far as material to this inquiry, are as follows: Both the complainant and the defendant claim title from a common source, namely, Ann E. Young, a widow, and Frank P. Young and Mae Young, his wife. The complainant's chain of title consists of a warranty deed from the Youngs, dated January 21, 1905, to the Aurora Construction Company; a warranty deed from the construction company to the Aurora, DeKalb and Rockford Traction Company, dated January 23, 1905; a deed from the master in chancery of the circuit court of Kane county in foreclosure proceedings against the Aurora, De-Kalb and Rockford Electric Traction Company, dated Oc-

tober 6, 1909, to the Chicago, Aurora and DeKalb Railroad Company; a deed from the special master of the circuit court of Kane county in a foreclosure proceeding against the Chicago, Aurora and DeKalb Railroad Company to Israel Joseph, dated January 31, 1923, and a quit-claim deed from Joseph and his wife to Kaneville township, dated January 20, 1928. Each of the deeds covered the premises in question, and those following the deed dated January 21, 1905, were made subject to the condition contained in that deed, as follows: "It is further understood and is a part of the consideration for this conveyance that when the gravel upon the said property hereby conveyed shall be entirely removed, the said premises shall thereupon without further conveyance revert to the grantors herein their heirs and assigns, except a strip of land running through said premises one hundred (100) feet in width to be then designated by the grantee herein and its assigns, which said one-hundred-foot strip shall not revert as aforesaid, but be retained by the said grantee and its assigns for railway purposes. All timber on said premises is expressly reserved by said grantors, who agree for themselves and their heirs and assigns, to remove the same so as to interfere in no way with the removal of gravel from said premises or the construction of railway tracks on or through the same."

The defendant's chain of title consists of a warranty deed from the Youngs to Charles E. Underwood, dated July 21, 1911, which recites that it is made subject to a deed executed by the grantors on January 21, 1905, and a warranty deed from Underwood and his wife, dated March 19, 1924, to Lyle B. Meredith, conveying, with other land, the following described real estate: "The south sixty-one acres of the east half of the northeast quarter of section 25, township 39 north range 6, east of the third principal meridian, in the township of Kaneville, Kane county, Illinois, (excepting therefrom the right of way of

the Aurora, DeKalb and Rockford Railway Company).''
The south ten acres of this tract is the real estate the title
to which is in question in this litigation.

Additional facts and circumstances are disclosed by the
record. On July 3, 1928, the complainant cut down a fence
which had been on the property prior to January 21, 1905,
and entered upon the premises with certain machinery for
the purpose of removing gravel. The defendant promptly
removed the machinery from the premises and repaired
the fence. Two days later he caused to be served upon
the complainant, through its highway commissioner, a no-
tice forbidding the complainant, its highway commissioner
or employees, from going upon the premises, under threat
of criminal prosecution. Neither the complainant nor any
of its predecessors in title ever was in actual possession of
the land, or, so far as the record discloses, ever entered or
attempted to enter upon it prior to July 3, 1928. The com-
plainant filed its bill six months later, namely, on Janu-
ary 25, 1929.

When the cause was before this court on the former
appeal the evidence failed to show how the Chicago, Au-
rora and DeKalb Railroad Company acquired title to the
property in controversy. "For all that appears in this rec-
ord," the court said, "the title to the premises in question
is still in the Aurora, DeKalb and Rockford Electric Trac-
tion Company." It was accordingly held that on the rec-
ord then presented the complainant could not maintain its
bill for injunction for the reason that it had failed to
show title in itself. The decree was not reversed, so far
as the complainant was concerned, owing to the failure of
the chancellor to grant the injunction sought but for the
purpose of giving it the further opportunity to supply evi-
dence with respect to its title. On the other hand, the
court also held that the defendant's record title was de-
fective. The defendant's claim of title under both sec-
tions 1 and 6 of the Limitations act, on the record pre-

sented at that time, was rejected. The court specifically held that section 1 did not commence to run while the Youngs and Underwood were in possession, namely, from 1905 to 1924. It was further held that under the record then before this court (1) the defendant could not avail himself of the fact that his predecessors in title, the Youngs and Underwood, had paid all the taxes assessed on the premises; and (2) that as he had had possession less than seven years prior to the beginning of the suit, section 6 was not applicable. "Having failed to prove title in himself," the court said that the defendant "has no standing in court to have such title quieted." The decision of this court was expressly limited to those issues.

The additional evidence in the record in the present appeal discloses: (1) The deed from the master in chancery of the circuit court of Kane county in foreclosure proceedings against the Aurora, DeKalb and Rockford Electric Traction Company, dated October 6, 1909, to the Chicago, Aurora and DeKalb Railroad Company, which supplied the missing link in the complainant's chain of title; (2) that Frank P. Young, one of the three grantors who are the common sources of title, was a party to that foreclosure proceeding; and (3) that the defendant has continued to cultivate and occupy the land in question and to pay taxes thereon since the filing of the original bill down to the date of the second decree, the same as he had done before the original bill was filed.

A question is presented which requires initial consideration. Although the complainant failed to prove its title until the cause was remanded, it contends that the decision of this court on the former appeal disposed of all the questions raised by the defendant on the present appeal as grounds for reversal. The defendant maintains that with the additional evidence in the record a question is presented which was not before the court on the former appeal and which could not have been raised and determined on that

appeal. Where a judgment is reversed by an appellate court the judgment of that court is final upon all questions decided and those questions are no longer open to consideration. If the cause has been remanded, the court to which it is remanded can take only such proceedings as conform to the judgment of the appellate tribunal. If specific directions are given, the court can do nothing but carry out such directions; if not given, it must be determined from the nature of the case what further proceedings would be proper and not inconsistent with the opinion. (*Pittsburg, Cincinnati, Chicago and St. Louis Railway Co.* v. *Gage,* 286 Ill. 213; *People* v. *Waite,* 243 id. 156; *Union Nat. Bank* v. *Hines,* 187 id. 109.) Where a cause in chancery is remanded generally for a new hearing, without directions, what is said in the opinion in regard to the weight of the evidence applies only to the record then under consideration, only the legal principles announced are binding upon another hearing, new evidence is admissible, and the issue is open to consideration upon all the evidence in the case. (*Pittsburg, Cincinnati, Chicago and St. Louis Railway Co.* v. *Gage, supra; Burton* v. *Perry,* 146 Ill. 71.) In the case last cited this court said: "In such case, it by no means follows, that other facts may not be proved within the principles announced, or not inconsistent therewith, or that amendments may not be made which obviate objections to granting the relief sought, or to the allowance of a defense interposed." In the present case the cause was remanded generally, but it was not open in either the circuit court or on appeal as to those questions presented by the record in the former appeal and decided by this court.

The new evidence supplied the missing link in the complainant's chain of title. It does not purport, however, to perfect the record title of the defendant, which was held defective on the former appeal. Nor does the present record show a change of circumstances which would distin-

guish the facts and issues with respect to the defendant's contention that he acquired title by adverse possession for twenty years, conformably to the provisions of section 1 of the Limitations act. The decision of this court on the issues of the record title of the defendant and· his claim predicated upon section 1 of the statute are therefore controlling on the identical issues presented for decision on the present appeal between the same parties. By the supplemental answer of the defendant to the amended bill and by the stipulation between the parties it appears that he has paid all taxes legally assessed against the property during the pendency of the suit and until March 1, 1934, the day the decree assailed was entered. On the day named the defendant had paid all taxes on the property for more than seven years, namely, since March 19, 1924. The controlling question presented for decision on this appeal is, in consequence, whether the filing of the bill for injunction on January 25, 1929, operated to suspend the running of the Statute of Limitations. We are not precluded from considering this contention, as the decision in the former appeal is not controlling on this question for the reason that new evidence has been properly introduced in the record now before us which was not, and could not have been, presented on the first appeal.

Section 6 of the Limitations act (Cahill's Stat. 1933, p. 1779; Smith's Stat. 1933, p. 1809;) declares: "Every person in the actual possession of lands or tenements, under claim and color of title, made in good faith, and who shall, for seven successive years, continue in such possession, and shall also, during said time, pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title. All persons holding under such possession, by purchase, devise or descent, before said seven years shall have expired, and who shall continue such possession, and con-

tinue to pay the taxes as aforesaid, so as to complete the possession and payment of taxes for the term aforesaid, shall be entitled to the benefit of this section."

In order to defeat the title of the complainant which was proved on the second trial and establish a bar under section 6 it was necessary for the defendant to prove (1) color of title obtained in good · faith; (2) payment of taxes for seven successive years as the holder of such color of title or by someone acting for him; and (3) continuous, uninterrupted possession for the statutory period. These three conditions must exist concurrently, without interruption, and must continue throughout the full seven years. (*Glos* v. *Wheeler*, 229 Ill. 272; *Blair* v. *Johnson*, 215 id. 552; *Taylor* v. *Lawrence*, 148 id. 388; *Clark* v. *Lyon*, 45 id. 388.) Whenever the bar of section 6 becomes complete the right and interest of the holder of the color of title is the same as that of any other absolute owner of land. *Simons* v. *Drake*, 179 Ill. 62; *McDuffee* v. *Sinnott*, 119 id. 449.

On March 1, 1934, the day the present decree was entered, the defendant had complied with the requirements of the statute. The complainant argues, however, that the seven-year statute was arrested the day the bill was filed, and that, in consequence, the defendant was precluded from supplying the evidence necessary to prove his title under section 6. The defendant answers, that since the present suit is merely a bill for injunction it does not suspend the running of the statute. Both parties place reliance upon the case of *Miller* v. *Pence*, 132 Ill. 149, to sustain their arguments. In the case cited, Pence instituted a suit against George W. Miller, Caroline K. Miller, his wife, and others, under the Burnt Records act, to confirm his title to a certain tract of land in Cook county. To prove his title Pence claimed color of title, with possession under such color of title, and payment of all taxes legally assessed on the premises for seven years. After Pence

went into possession of the property Miller brought an action of ejectment against him to recover possession of this property, and that action was pending during a portion of the statutory period. To obtain a reversal of the decree in favor of Pence, Miller contended that the payment of taxes could not be counted while the ejectment action was pending. "It is a sufficient answer to the position assumed," this court said, "that the statute has not provided for an exception of this character, and in the absence of a provision of the statute, courts have no right to make an exception by judicial construction. If the legislature had intended that the running of the Statute of Limitations should be arrested while an action of ejectment was pending, it is manifest that it would have so declared."

The complainant argues, however, that as applied to the present case the *Miller case* actually sustains its position. It is true, as the complainant asserts, that in the course of its opinion the court said the owner of the paramount title can arrest the running of the statute at any time within the seven-year period by bringing his action, and that it would be his own fault if he stood by and allowed the occupant to hold the land until the statutory bar became complete. The language invoked by the complainant was not used in connection with the decision concerning the contention of Miller but was used in considering the contention made by his wife that the statute did not run against her inchoate dower right. In reversing the decree as to Caroline K. Miller only, the court said: "When a person goes into possession of a tract of land with color of title, and remains in possession for seven successive years, and pays all taxes assessed on the land, he may invoke the aid of the statute as a bar to a recovery in favor of a person holding the paramount title to the land, whether such holder may be under the disability of coverture or not. The statute works no hardship. The owner of the paramount title can arrest the running of the stat-

ute at any time by bringing his action. If he lies by and allows the occupant to hold the land until the statutory bar becomes complete, it is his own fault. Not so, however, in a case of this character. Here, Mrs. Miller has no right or title which can be enforced while the husband lives. She can bring no action to arrest the running of the statute." The quotation upon which the complainant relies did not relate in any manner to the question of whether the pendency of the action at law suspended the running of the Statute of Limitations. The *Miller case* wholly fails to sustain the complainant's position.

Again, in the case of *Gage* v. *Chicago Title and Trust Co.* 303 Ill. 569, the rule announced in *Miller* v. *Pence, supra,* was followed. Gage filed a bill for declaration of the title to a lot and partition thereof, alleging that the title was obtained under the Statute of Limitations through color of title acquired in good faith and payment of taxes. Two of the defendants had brought an ejectment suit on June 17, 1908, against the complainant's father for possession of the premises. The latter filed a plea of not guilty, and the suit was pending until his death, on May 7, 1911. The plaintiffs in the ejectment suit did not avail themselves of the privilege of reviving the action and the suit in question was instituted five years after his death. In holding that the ejectment suit did not suspend the Statute of Limitations while the suit was pending against the complainant's father the court said: "The right to interpose the defense of the Statute of Limitations was fixed as of that date for the purpose of that suit and no other. The plaintiff in an ejectment suit asserts his title at the commencement of the suit, and if the suit is prosecuted to judgment a defense of the Statute of Limitations would only be permissible up to that time. The limitation statute has made no exception that the statute can be arrested by the commencement of a suit, and the courts have no right to make one by judicial construction. (*Miller* v.

*Pence,* 132 Ill. 149.) Disregarding the fact that the plea of another suit pending alleged an action at law and was presented in abatement of a suit in equity, where the procedure and manner of execution' were different and the judgment or relief would not be the same, * * * the conclusion of the chancellor was wrong."

Both the *Miller* and the *Gage cases* were suits in chancery and the intervening actions of ejectment relied upon to toll the Statute of Limitations were actions at law. If the pendency of an action in ejectment does not suspend the operation of the Statute of Limitations, certainly the filing of a bill for an injunction does not preclude one in possession of real estate under color of title by deed of record, and who has paid all taxes legally assessed against the property, from perfecting his claim of title by meeting the requirements of the statute.

The complainant contends, however, that in equity, as well as at law, the Statute of Limitations does not run after suit has been begun by the adverse party, and *Manson* v. *Berkman,* 356 Ill. 20, and *DeProft* v. *Heydecker,* 297 id. 541, are invoked to sustain the contention. In the case last cited the complainant filed a bill to quiet title to a certain tract of land, the title of which was originally in one Cameron, and to compel the heirs of Cameron to convey the legal title to him. The complainant's bill was filed four months before the bar of section 6 of the Limitations act would have been complete. Several of Cameron's heirs filed an answer denying the complainant's title and relying upon their own title from their father. They also filed cross-bills for partition of the land in question. The answers and the cross-bills were filed before the Statute of Limitations had fully run. Under these circumstances the court held that the filing of the cross-bills for partition by the holders of the paramount title would arrest the running of the statute as the full seven years had not intervened between the first payment of taxes and the

filing of the cross-bills. The primary object of the cross-bill in the *DeProft case* was to arrest the running of the statute. In the present case the bill for injunction did not seek to suspend the running of section 6 of the Limitations act. Manifestly, the case of *DeProft* v. *Heydecker, supra,* is not parallel to the case at bar. A similar situation obtained in the case of *Manson* v. *Berkman, supra.*

Had the complainant brought an action of ejectment against the defendant on January 25, 1929, it would have been necessary for him to have shown that seven full years had intervened between the day when the first payment of taxes was made and the day of the commencement of the action in order to avail himself of the provisions of section 6 as a defense. (*Holbrook* v. *Debo,* 99 Ill. 372; *Clark* v. *Lyon,* 45 id. 388.) While in an action at law the rights of the parties are determined as of the time of the beginning of the action, a decree in chancery is a determination of the rights of the parties to the suit according to equity and good conscience, and where relief is granted by a decree, it is such as the nature of the case, the law and the facts demand—not at the time of the inception of the litigation but at the time the decree is entered therein. (*Baker* v. *Salzenstein,* 314 Ill. 226.) The complainant in the present case elected to file a bill in equity for the purpose of obtaining a mandatory injunction to compel the defendant to remove a fence from two sides of the tract in question. The bill did not seek to deprive the defendant of possession nor prevent him from paying the taxes. The decree in this case was entered on March 1, 1934, and at that time the defendant had fully performed under section 6. The rights of the parties, therefore, must be determined as of March 1, 1934, and not as of January 25, 1929, the day the bill for injunction was filed. Since the defendant was entitled to have his title quieted on that day, it necessarily follows that the complainant was not entitled to the injunction sought and granted.

The complainant further contends that one chain of title conveyed to it the right to the gravel underneath the surface and that the other chain conveyed to the defendant the right of possession of the surface. To sustain its contention the complainant invokes the rule that separate estates, such as those to the surface and those underneath the surface, such as coal and minerals, may be created and conveyed distinct from each other, (*Catlin Coal Co. v. Lloyd*, 180 Ill. 398; *Catlin Coal Co. v. Lloyd*, 176 id. 275;) and that where there has been a severance of the mineral estate from the surface estate the owner of the latter can acquire no title by the Statute of Limitations to the minerals by the exclusive and continued enjoyment of the surface. (*Uphoff v. Trustees of Tufts College*, 351 Ill. 146; *Catlin Coal Co. v. Lloyd*, 180 id. 398.) The deeds from the Youngs to the Aurora Construction Company and from the latter to the Aurora, DeKalb and Rockford Electric Traction Company conveyed the entire land above and below the surface, together with the right of possession until the gravel was removed, and not merely the right to the gravel. Neither the deeds in the chain of title of the complainant nor in the defendant's chain of title are susceptible of the construction urged. Furthermore, there is neither allegation nor proof of separate taxation of two independent estates. The fact that the defendant and his predecessors in title have paid all the taxes assessed on the property since 1905 likewise refutes the complainant's contention.

The decree of the circuit court is reversed and the cause is remanded to that court, with directions to enter a decree in conformity with the prayer of the cross-bill filed by the defendant. *Reversed and remanded, with directions.*