# HENRY C. DICKERSON

### *v.*

# MARY EVANS.

1. CONVEYANCE—*when deed will not be disturbed.* Where a party executing a deed is of an advanced age and illiterate, if the deed be read to her, and her rights made known to her by the officer taking her acknowledgment, public policy, the stability of titles, the peace of society, all demand the transaction shall not be disturbed.

2. SAME—*whether obtained by fraud.* In this case a son procured a conveyance of land to himself from his mother, who afterwards alleged the deed was obtained by fraud. The circumstances attending the transaction, as set forth in the opinion of the court, are held not to afford sufficient evidence of fraud to invalidate the deed.

3. PURCHASER *without notice.* One who purchases without notice of an equity, is not affected by such equity.

4. FRAUD *of vendor does not affect vendee who is an innocent purchaser.* Though fraud so vitiates and taints, in law and equity, every transaction as to render it void, not only as to the actual perpetrators, but also as to those who connive at and seek to profit by it, still it is not in harmony with the principles of law or equity to declare void a conveyance to an innocent purchaser because of the fraud of his vendor in obtaining the title.

WRIT OF ERROR to the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

Messrs. HUGHES & McCART, and Mr. A. B. CAMPBELL, for the plaintiff in error.

Messrs. ROWELL & HAMILTON, for the defendant in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was ejectment, in the McLean circuit court, by Henry C. Dickerson, plaintiff, and Mary Evans, defendant, resulting in a verdict for the defendant. A motion for a new trial as at common law was denied, and judgment rendered on the verdict, to reverse which plaintiff has brought the record here by writ of error.

The parties claimed from the same source, one Francis Evans, deceased, who was the husband of the defendant. The plaintiff claimed five-sixths of the premises by conveyances from the heirs at law of Francis Evans, who had conveyed to John B. Evans, one of the heirs at law, as also his mother, the defendant in this suit, and John B. Evans and wife conveyed the same to plaintiff.

The controversy arises upon the conveyance from the defendant, Mary Evans, to her son John B. Evans, she insisting that the same was obtained by the fraud of John, and so the jury, under instructions of the court, found. The interest conveyed by Mary Evans, the defendant, to her son, was her dower interest, which she was occupying, and did occupy, at the commencement of the suit. The only direct testimony introduced to prove fraud in obtaining the deed from the de-

fendant was, the parties to the transaction, the grantor, and her son, the grantee, and his wife, Dulcina Evans.

We have examined this testimony carefully, and whilst it tends to show improper conduct on the part of her son John, it falls short, when taken in connection with the testimony of the notary, Mr. Ballard, who took the examination of the grantor, of satisfying us it invalidates the conveyance.

If a party making a deed be of an advanced age (sixty in this case), and illiterate, if the deed be read to her, and her rights made known to her by the officer, public policy, the stability of titles, the peace of society, all demand, the transaction shall not be disturbed.

Henry H. Ballard, the notary, who had been such eight years, and knew the grantor well, and who appears to be an elder in the church, testifies fully to all the circumstances attending the execution of the deed, and he testifies, in the fullest and most unqualified manner, as to all the facts attending the execution of the deed. When John was hurrying him to act, the notary replied, he was not there to make contracts, but simply to confirm whatever you two agree on. Then John urged his mother to hasten. The notary, believing it his duty, said to her: "Mrs. Evans, if you sign away this home land, you must do it freely, for there is no law in the world to compel you to do it." He further says: "I told her, when a man dies, and leaves his wife in possession of property, the law provides it shall not be taken away from her. This is called a homestead." John then interrupted his mother, she saying she could not see what the 33 acres had to do with it, he saying to the notary, "it's of no use repeating that stuff; go on and fix up the papers." The notary replied: "Until your mother consents, I can do nothing." John then took his mother aside, and after a few minutes she signed the deed, the 33 acres not being put in it, and no change made in the description. The notary read the deed to her, exactly as it was, and explained the contents to her, and said to her, if you sign that deed, you must do so of your own free consent.

Laying out of view all other testimony in the case going to corroborate these statements, there is nothing shown to weaken their force.   It is true, the notary did state to one of defendant's attorneys, that in his opinion the defendant did not know what she deeded when he took the acknowledgment, and to Mrs. Whiting, that John's statement had deceived her, and that his (the notary's) explanation was such as to mislead her. This may all be so, yet it does not alter the aspect of the case. The law raises the presumption she did know and understand what she was doing.   It was her duty to know it, and she must be held to the deed.   If, in such a case as this, with such testimony to sustain a deed, conveyances of land are to be declared invalid and made in fraud, then there can be but little security in paper titles.

Here is a case where a tract of land has been subject to several conveyances without a word of remonstrance from any, and with no suggestion of fraud attaching to them—first, by trust deed by John B. Evans to Corydon Weed, to secure a loan of one thousand dollars; next, a conveyance to the plaintiff in this action, and a redemption by him from the trust deed, at a cost, in all, of more than two thousand dollars. Neither Weed nor plaintiff was a party to any fraud, and they had a right to rely on the face of the papers showing a fair transaction.   We do not think there is sufficient evidence of fraud to invalidate the deed of defendant.

Plaintiff in error complains that the court erred in excluding the evidence of the notary, that he made no misrepresentations or misstatements to Mrs. Evans, so as to induce her to believe it was a deed for another tract of land.

It was not charged or attempted to be shown that the notary had so done, therefore the evidence that he had not was properly excluded.

It is objected, the court permitted the defendant, and also John B. Evans, to testify, against the objection of the plaintiff, that John had paid nothing for the land.   This, on the authority of *Escherick* v. *Traver*, 65 Ill. 379, was not an element of inquiry, and might have prejudiced, very seriously, the

plaintiff's case.    Withdrawing it from the jury by an instruction did not cure the evil.    *Railroad Co.* v. *Winslow et al.* 66 id. 219.

Exceptions are taken to the rulings of the court in respect to many of the instructions.    It is unnecessary to particularize all of them.    Those which go against the proposition that an innocent purchaser of land for value, without notice of any fraud attending the execution of the instrument, should not have been given.    The doctrine is, one who purchases without notice of an equity, is not affected by such equity.    A purchaser is presumed to have notice of any defect of title apparent on the face of his title papers, but is not required to look for latent defects in the chain of conveyances, when they purport to be made by the proper persons.    *Moore* v. *Hunter et al.* 1 Gilm. 317.    Though it be true that fraud so vitiates and taints, in law and equity, every transaction as to render it void, not only as to the actual perpetrators, but also as to those who connive at and seek to profit by it, still, it is not in harmony with the principles of law or equity to declare void a conveyance to an innocent purchaser because of the fraud of his vendor—this would be illegal and unjust.    *Prevo* v. *Walters et al.* 4 Scam. 35.    It would be dangerous to purchase land if such was not the doctrine.

Defendant in error cites with approbation, as analogous to this case, the decision of the Supreme Court of New York of *Jackson ex dem. Tracy* v. *Hayner*, 12 Johns. 470, where a deed executed under somewhat similar circumstances attending this, was held fraudulent and invalid.    A very great and marked difference in the cases is this: In the case cited, the witness, who drew the assignment, being about to read it to the old gentleman for his signature, was prevented by the son, to whom the assignment was made, and it was not read to the father, who did not want to sign it, and who said he was not fit to sign any paper.    Here, the deed was read and explained to the grantor, and her rights in the land fully made known to her.

We are satisfied, on a full examination of the record, that the verdict and judgment are wrong, and must be set aside and reversed, and the cause remanded for a new trial and for further proceedings consistent with this opinion.

*Judgment reversed.*