**Mary J. Van Sickle, Plaintiff in Error, v. Henry Harmeyer, alias William L. Allen et al., Defendants in Error.**

### Gen. No. 16,736.

1. JUDGMENT—*vacation to prejudice of bona fide holder.* An entry in satisfaction of a judgment will not be vacated to the prejudice of a bona fide purchaser of property who became such while the judgment appeared of record to be satisfied and discharged.

2. MORTGAGES—*acts of mortgagor as affecting mortgagees's right to foreclose.* Promises of a transferor of property to a transferee that he would pay the interest on a loan thereon and aid such

transferee in securing a new loan or an extension of the old one will not affect the mortgagee's right to foreclose.

3. Mortgages—*effect of foreclosure decree.* Previous promises made a transferee of mortgaged premises by the transferor will not affect the title obtained in foreclosure proceedings, as all such matters were determined and settled by the decree.

4. Vendor and purchaser—*effect of bona fide purchase.* One who purchased property for full value from the record owner without notice that another either had or claimed any interest therein, and who used the property for his own personal use, is a purchaser in good faith without notice and is entitled to have his title fully protected even though another than the vendor was guilty of fraud in his dealings with his divorced wife in respect to such property.

5. Judgment—*lis pendens.* Pendency of a motion made in original divorce proceedings to set aside a settlement decree will not operate as a *lis pendens* or a constructive notice for the reason that the court had no jurisdiction therein to hear and determine the motion.

6. Mortgages—*effect of foreclosure.* One who is a party to foreclosure proceedings is bound by the decrees, sales and deeds issued thereunder, and is thereafter a stranger to the title.

7. Judgment—*setting aside consent decree.* In an action to set aside a consent decree, evidence *held* not to show a conspiracy among certain defendants to defraud the plaintiff.

8. Deeds—*right to prove consideration by parol.* That the express consideration in a deed is one dollar will not cast suspicion of fraud on the transaction, as the true consideration, though different from that expressed, may be shown by parol.

9. Trusts—*cestuis que trust as necessary parties to action affecting the res.* Where the answer in a suit to set aside a consent decree disclosed that property held in trust was affected, and the bill was not amended to make the *cestuis que trust* parties, no relief was warranted against either the property or the holders of the equitable title.

10. Laches—*right to set aside consent decree.* Where a consent decree, modifying an original decree for divorce and alimony and releasing the payment of alimony in consideration of the transfer of certain property, was allowed to remain undisturbed for four years, during which time mortgages on the property were foreclosed in actions to which the divorced wife was a party and she knew for three years that her former husband was not carrying out alleged promises to redeem, pay taxes, etc., she is estopped by her laches from relief in an action to set aside the consent decree as against defendants who purchased the property from the holder of the master's deed.

11. LACHES—*duty on discovery of fraud.* Where a party discovers fraud it is his duty to act with great promptness to disaffirm the transaction.

12. TRUSTS—*existence of fiduciary relationship.* Whether there was a fiduciary relation existing between parties to a transaction will depend upon all the facts and circumstances of the particular case.

13. DIVORCE—*fiduciary relation of husband and wife.* There was no fiduciary relation existing between a husband and wife which would invalidate a consent decree superseding a decree for alimony for the fraud of the husband where the parties had been divorced for a year, during which time the wife had instituted several proceedings to collect alimony and constantly employed a solicitor to look after her interests.

14. JUDGMENT—*waiver of objection by accepting benefits.* Where a party to a consent decree, replacing a decree for alimony and providing for the transfer to her by her former husband of certain property in lieu of alimony, accepted benefits of decree and retained the property, there was a waiver of objection to the decree.

15. JUDGMENT—*offer to return as condition to vacation of consent decree.* Where a decree was entered in pursuance of a compromise settlement between the parties, one of them who enjoyed the avails of the settlement with full knowledge of the facts could not have it vacated without an offer in the bill to return everything received pursuant to the agreement.

16. CONTRACTS—*equitable relief against judgment.* The making of promises to induce the making of a contract or entry of a judgment, which are not kept, will not sustain a bill to set aside the contract or decree.

17. FRAUD—*promises as basis of action.* Though, to induce his former wife's consent to the entry of a decree releasing the payment of alimony provided for by the decree of divorce, a husband made promises and agreements to pay taxes, satisfy mortgages, etc., which he did not intend at the time to perform, his acts will not constitute ground for an action of fraud at law or for equitable relief.

Error to the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Affirmed. Opinion filed October 1, 1912.

**Statement by the Court.** This case is before us upon writ of error to the Circuit Court of Cook county. On April 5, 1906, plaintiff in error, complainant in the court below, filed a bill to set aside a certain consent decree upon the ground that it had been fraudulently

procured by defendant. On June 11, 1907, the bill was dismissed on hearing for want of equity.

The bill avers in substance that Mary J. Van Sickle, the complainant, was formerly Mary J. Harmeyer, wife of Henry Harmeyer, who was her second husband; that her first husband's name was Van Sickle; her maiden name was Mary J. Kane. She obtained a decree of divorce from Henry Harmeyer on July 20, 1901, by the terms of which she was entitled to $25 per week as alimony from the said Henry Harmeyer, and certain property was conveyed to one Gerard F. Harmeyer under a declaration of trust for the use and benefit of complainant, to secure the payment of alimony in accordance with the decree; and that Henry Harmeyer should pay, as part of the alimony, all interest, taxes and assessments due and owing on the property in question, which had been held by her under her maiden name of Mary J. Kane. Complainant was by the decree released from any claim which Henry Harmeyer held against her, and all powers of attorney and other instruments in writing theretofore given by her to Harmeyer were revoked. There was paid to complainant $425 on her allowance of alimony up to and including May, 1902.

The bill avers that complainant was urgent in endeavoring to obtain the alimony due her, and met and took up with Henry Harmeyer the matter of payment of alimony and providing means for her support; that the defendant made certain representations to her as to the value of certain property and the incumbrances thereon, which, at the time, she believed to be true, but has since learned to be in many respects false; that he proposed a new settlement of the divorce decree, promising and representing that he would see that the taxes and interest were paid and that he would redeem the property held by Gerard F. Harmeyer under the trust agreement, and also some other property, so that she could carry it and would be enabled to clear it, and

that he would pay her alimony right along if she did not press him too hard; also that he would pay her at that time $500 to apply upon what was due her, and pay taxes, interest and alimony, and see the loans renewed and that no foreclosure should take place; also that he would cause certain property on Kimbark avenue (then stated by him to have an incumbrance of $4,500 only, free and clear of all past due interest and taxes) and also property at 2120 Dearborn street and 2121 Armour avenue (then stated by him to have an incumbrance of $6,500 only, and all past due interest and taxes paid, making the incumbrances on all said property amount to $11,000), to be conveyed to complainant, and that he would attend to all these matters for her and see that she should have a comfortable living therefrom. Complainant, relying upon these representations, agreed to a settlement, entered of record in the Circuit Court of Cook county on September 22, 1902, whereby the decree entered on July 20, 1901, was changed, releasing Henry Harmeyer from the payment of any alimony to complainant, and also from the payment of interest, taxes and assessments due and to become due on the premises known as 5620 Kimbark avenue, all of which was in consideration of the procurement by Henry Harmeyer of the transfer to complainant of the premises known as 2120 Dearborn street and 2121 Armour avenue, in the city of Chicago, and of the payment of $500 in cash to complainant.

The bill further avers that on September 22, 1902, the amount of alimony due complainant under the original divorce decree was $1,500; that prior to that time only $425 had been paid, and that after the payment of $500 there still remained due complainant $675.

The bill then avers that after the settlement and entry of said order modifying the original divorce decree, Henry Harmeyer failed to keep his promises to remove liens upon the property and to procure a renewal of loans on the same; that he did everything

in his power to prevent renewal of loans on the property by complainant; that he failed to pay interest and taxes due, and purposely allowed defaults in interest and taxes so as to force the parties having liens to foreclose; that the foreclosures were made, and a receiver appointed, and that either Henry Harmeyer or the receiver obtained all the rent of the premises at 2120 Dearborn street and 2121 Armour avenue, and complainant never received any income from those premises; that by reason of such fraudulent acts on the part of Henry Harmeyer, complainant was not only obliged to submit to foreclosure of the property at 5620 Kimbark avenue, but was obliged, for more than a year, to pay rent for said premises at the rate of $25 per month; that by such foreclosure proceedings complainant was deprived of all of said real estate, which she supposed she was to receive from Henry Harmeyer, so that the effect of the modification of the original divorce decree, by reason of the fraudulent acts of Henry Harmeyer, was to entirely defeat the provisions made for the support and maintenance of complainant, with the exception of $500 which was paid to her; that the property passed into the hands of various other parties; that Henry Harmeyer, confederating with Emma Harmeyer, Louise Robertson, William B. Wilson and Frederick A. Weil, contrived to injure complainant in the premises, so obtained title to said property, and they refuse to surrender same, or any part thereof to complainant, doing all in their power to deprive her of her rights under the divorce decree.

The complainant further sets out the devolution of title to the property known as 5620 Kimbark avenue, whereby the title became vested in William B. Wilson, and avers that all of said conveyances were in the interest of Henry Harmeyer, and were not real conveyances but were made to cover up the property so that the complainant might not be able to enforce her rights against Henry Harmeyer; that the title so

acquired by Henry Harmeyer through Emma Harmeyer and William B. Wilson should be held for the benefit of complainant, and that Henry Harmeyer, Emma Harmeyer and William B. Wilson, and all other persons claiming under them, should be required to convey all their title to said premises to complainant.

The bill also sets out the devolution of title to the property known as 2120 Dearborn street and 2121 Armour avenue, whereby the title thereto became vested in Frederick A. Weil, and complainant avers that the said conveyance to Weil was made merely to cover up and further complicate the title, and was in the interest of Henry Harmeyer; that all of said conveyances were in fraud of complainant and should be set aside, and that all titles to such property acquired by deeds to Louise Robertson, Emma Harmeyer and Frederick A. Weil should be held for the benefit of complainant, and the property should be subjected to the payment of all amounts due her under the divorce decree and subsequent proceedings.

The bill prays for an injunction restraining Henry Harmeyer from disposing of, encumbering or in any way removing any of his property, or in which he has any interest, until the further order of the court, and that the other defendants, interested in the property in 5620 Kimbark avenue, 2120 Dearborn street and 2121 Armour avenue, may be enjoined in like manner; also that the order changing the divorce decree may be set aside and said decree restored and remain in full force and effect; that the release be set aside, and complainant have her rights as fully as though said release had never been signed; that alimony due her under the decree of July 30, 1901, at the rate of $25 per week, less $925 already received, be paid complainant; that she recover all rent she was obliged to pay while occupying 5620 Kimbark avenue, also such additional sum as would compensate her for the failure to have the premises for her to live in since she was

driven out by foreclosure proceedings; that the title to the property at 5620 Kimbark avenue be reconveyed to complainant; that the foreclosure proceedings by which 2120 Dearborn street and 2121 Armour avenue were conveyed to the other defendants, be declared null and void, and that they be compelled to convey title to complainant or to a trustee for her benefit.

The defendant, William B. Wilson, answered the bill, setting up that the title to 5620 Kimbark avenue was acquired by him in the following manner: Plaintiff in error, complainant, under the name of Mary J. Kane, being the owner of said property by a trust deed dated June 8, 1897, recorded June 10, 1897, conveyed the property to Herman Felsenthal, to secure $4,500 and interest.

On February 18, 1902, Isaac Levinson, the owner of the indebtedness secured by said trust deed to Felsenthal, filed his bill of complaint in the Circuit Court of Cook county, case Gen. No. 225,403, to foreclose the said trust deed to Felsenthal; to said bill, Mary J. Kane, among others, was made a party defendant and duly appeared and answered the bill. On September 27, 1902, a decree of foreclosure was entered in said cause by virtue of which, one of the masters in chancery sold said premises to said Levinson on October 25, 1902; said sale was confirmed by court on October 31, 1902; no redemption having been made from said master's sale, by deed dated February 1, 1904, and recorded February 1, 1904, said master in chancery conveyed the said real estate to said Isaac Levinson.

Afterwards by warranty deed dated April 2, 1904, and recorded April 15, 1904, Isaac Levinson and wife conveyed said real estate to Emma Harmeyer, and by trust deed dated April 4, 1904, and recorded April 12, 1904, Emma Harmeyer conveyed said premises to the Chicago Title & Trust Company, as trustee, to secure the payment of $3,500 and interest, due in five years after date, being part of the purchase price of said premises.

Afterwards, by warranty deed dated February 1, 1905, and recorded February 14, 1905, Emma Harmeyer, a widow, conveyed said premises to William B. Wilson, subject to said incumbrance of $3,500, and by trust deed dated February 1, 1905, Wilson conveyed said property to the Chicago Title & Trust Company, as trustee, to secure an indebtedness of $1,000 and interest, being part of the purchase price.

The defendant Weil answered the bill, averring that he acquired title to 2120 Dearborn street and 2121 Armour avenue as follows: Plaintiff in error, under the name of Mary J. Kane, being the owner of the premises known as 2120 Dearborn street and 2121 Armour avenue, by a trust deed dated March 22, 1900, and recorded March 29, 1900, conveyed said premises to Max Guthmann, to secure the payment of $7,500 and interest; afterwards, by a warranty deed dated July 6, 1901, and recorded July 19, 1901, Mary J. Kane, a widow, conveyed said premises to Gerard F. Harmeyer; by declaration of trust, dated July 30, 1901, and recorded on the same day, Gerard F. Harmeyer declared that he held the title to 2120 Dearborn street to secure to Mary J. Van Sickle the payment of alimony and taxes on 5620 Kimbark avenue, as provided in the decree of divorce of July 30, 1901, and afterwards, by mesne conveyance, the title to the Dearborn street and Armour avenue property, subject to the trust deed to Guthmann, trustee, dated March 22, 1900, and to other encumbrances, became vested in Edna Harmeyer; and by quit claim deed dated September 22, 1902, and recorded on the same day, Edna Harmeyer and husband conveyed 21'' Dearborn street and 2121 Armour avenue to Mary J.    ʼn Sickle.

Abram S. Farber, the owner    ʼe indebtedness secured by the trust deed dated 1    ʼ. 22, 1900, and Max Guthmann, as trustee in said 1    deed, filed a bill in the Circuit Court of Cook count    se Gen. No. 226,757, to foreclose said trust deed fro    ʼry J. Kane to Max

Guthmann, dated March 22, 1900.  To this bill of complaint, among others, Mary J. Kane, otherwise known as Mary J. Harmeyer, otherwise known as Mary J. Van Sickle, was made a party defendant, and duly appeared in said cause and filed her answer therein.  On November 20, 1902, a decree of foreclosure was entered in said foreclosure suit, and thereafter, on December 18, 1902, one of the masters in chancery of the Circuit Court, by virtue of said decree, sold said Dearborn street and Armour avenue property to Abram S. Farber, and said sale was duly approved on January 10, 1903; Abram S. Farber assigned his certificate of sale to Ida K. Farber, his wife, and no redemption having been made from said master's sale, by deed dated July 12, 1904, and recorded July 16, 1904, the master in chancery conveyed said Dearborn street and Armour avenue property to Ida K. Farber.  By deed dated June 30, 1904, and recorded July 16, 1904, Ida K. Farber and husband conveyed said Dearborn street and Armour avenue property to Louise Robertson, and Louise Robertson, by trust deed dated April 15, 1904, and recorded July 5, 1904, conveyed said real estate to the Chicago Title & Trust Company, as trustee, to secure the payment of $8,000 and interest, and by trust deed dated June 30, 1904, and recorded July 16, 1904, Louise Robertson and husband conveyed said real estate to the Chicago Title & Trust Company, to secure a further indebtedness of $1,500 and interest.  Afterwards, by warranty deed dated October 17, 1904, and recorded October 18, 1904, the said Louise Robertson and husband conveyed said Dearborn street and Armour avenue property to Frederick A. Weil, subject to said two incumbrances of $8,000 and $1,500 respectively.

The answer of Henry Harmeyer filed April 28, 1906, to the bill of complaint, admits that complainant was formerly wife of the defendant, and that she obtained a divorce from him and resumed the name of Mary J.

Van Sickle; it admits that he is known as William L. Allen, and that the decree of divorce was entered in the Circuit Court of Cook county on July 30, 1901, and contains the provisions stated in complainant's bill; admits that the decree provided for alimony as alleged, and that he paid $425 of the alimony up to May, 1902, and admits the trust agreement.

The answer alleges that complainant's attorney, who represented her in procuring a divorce, acted for her in efforts to collect alimony, and that the respondent was unable to keep the alimony provided in the decree paid up, and that, being unable to meet the payment of alimony and being pressed by complainant, placed the matter in the hands of T. S. Allee, his attorney, and that Allee and Condee, complainant's solicitor, had frequent interviews, and made many attempts to arrange some basis as a solution of the demands by complainant.

His answer admits that the complainant entered into the settlement set forth in the order of September 22, 1902, whereby the previous decree was modified, and sets out the order in full; admits that the release set up in the bill was executed by the complainant, and alleges that the order of September 22, 1902, was the result of long negotiations. The answer alleges that the solicitor for complainant represented to the solicitor for the respondent that he had fully informed complainant of the terms of the supplementary order, and had advised her to accept the same, and that she was willing to make a compromise, and thereupon solicitor for this respondent submitted to respondent a draft of the decree, and respondent agreed to its terms, and if the decree was entered, he was prepared to carry out the provisions in good faith; that respondent never consulted with complainant relative thereto.

The answer alleges that complainant and her solicitors were fully apprised of the condition of the properties mentioned in the decree; that the title to the

property on Kimbark avenue, Dearborn street and Armour avenue had always been in her name, and she had made the incumbrances on said property and knew all about them.

The answer further alleges that all negotiations for settlement embodied in the order of September 22, 1902, were carried on by the solicitors, and neither complainant nor defendant consulted with each other, but they were at all stages advised of the terms of said agreement, and after the decree was prepared, the solicitors, together with complainant, went into court and had the decree entered.

The answer further alleges that respondent complied with all the terms of the decree, paid complainant $4,500 and procured a transfer to her of the title to 2120 Dearborn street and 2121 Armour avenue, in full satisfaction of respondent's obligation.

The answer avers that respondent had no information of the transfers of the property mentioned in the bill of Emma Harmeyer, William B. Wilson or the Chicago Title & Trust Co., and denies that the conveyances were in the interest of this respondent, or to cover up the property so that complainant might not be able to enforce her rights; and denies that the title acquired by Emma Harmeyer and William B. Wilson is held for the benefit of the respondent, or that it should be held for the benefit of complainant; and avers that respondent has no knowledge as to a master's deed issued to Ida K. Farber, or any receipt in the nature of a contract to purchase, given to Emma Harmeyer, or any quit-claim to Louise Robertson, and denies any knowledge regarding conveyance to the Chicago Title & Trust Company. Defendant admits that Louise Robertson is his sister, but denies that Louise Robertson and Emma Harmeyer acted in the interest of this respondent, or that he furnished the money to make the purchases, or used the names of his sisters for the purpose of defrauding complainant.

Defendant states that he had no knowledge or notice of the conveyance of the premises to Frederick A. Weil, and denies any acquaintance with Weil or William B. Wilson; and denies specifically all the other averments of the bill.

The answer of Emma Harmeyer and Louise Robertson, filed May 7, 1906, sets up and avers many of the facts stated in the answer of Henry Harmeyer, and avers that the conveyances made by them were in good faith, for a valuable consideration, and that since said conveyances they have no interest in the property conveyed, and avers that they have no interest in any of the matters in controversy, and denies that complainant is entitled to any relief against them.

L. D. CONDEE and WILLIAM STREET, for plaintiff in error.

CHARLES L. BARTLETT, SHERMAN C. SPITZER, and VAIL & VETTE, for defendants in error.

MR. JUSTICE F. A. SMITH delivered the opinion of the court.

It appears from the documentary evidence offered that the conveyances set up in the answers of William B. Wilson and Frederick A. Weil were made in the order set forth in their answers. It further appears that the purchase of the Dearborn street and Armour avenue property from Louise Robertson was in fact made by L. F. Minzesheimer and Mason B. Starring, and that the title was taken by them for convenience in the name of Frederick A. Weil; that Minzesheimer and Starring purchased the property in good faith and gave for the conveyance from Louise Robertson certain Chicago real estate, valued at $1,200 to $1,500, certain Iowa real estate, valued from $1,500 to $2,500, $1,260 in cash, and assumed $9,500 of incumbrances resting upon the Dearborn street and Armour avenue

property. The evidence further shows that at the time Minzesheimer and Starring purchased the Dearborn street and Armour avenue property and took title thereto in Weil's name, neither Minzesheimer, Starring nor Weil had any knowledge or notice, either actual or constructive, that Henry Harmeyer either had or claimed to have any interest in the property, or any knowledge or notice, either actual or constructive, of any of the claims now made by the complainant in her bill. The answer to the bill filed by Weil on May 25, 1906, disclosed the interest of Starring and Minzesheimer in the Dearborn street and Armour avenue properties, but neither Starring nor Minzesheimer were ever made parties defendant to the bill. In our opinion the evidence shows that the defendants, Wilson and Weil, are bona fide purchasers for value of their respective properties, without knowledge or notice, either actual or constructive; that at the time of their respective purchases, Henry Harmeyer either had or claimed to have any interest in the real estate, and without knowledge or notice, either actual or constructive, of any of the claims now made by the plaintiff in error.

The main object of the bill is to set aside the settlement decree of September 22, 1902, and to restore the provisions for alimony contained in the decree of July 30, 1901, and plaintiff in error contends that she is entitled to this relief because her consent to the entry of the decree of September 22, 1902, was obtained by means of certain false promises made to her by Harmeyer. It is not claimed, however, that either Wilson, Weil, Minzesheimer or Starring had anything to do with the entry of the decree of September 22, 1902, or that they or either of them took any part in the alleged fraud that was perpetrated upon the plaintiff in error by Harmeyer. Evidently, when the original bill in this case was filed, plaintiff in error supposed that Wilson and Weil were mere dummies for Harmeyer,

and held the titles to their respective properties in secret trust for him; but, upon the final hearing no evidence was adduced which showed or tended to show that either Wilson or Weil held title in trust for Harmeyer, or that Harmeyer at the time of the filing of the bill had any interest of any kind or nature in either of the parcels of real estate named; but, on the other hand, the evidence clearly showed that Harmeyer had no interest in the purchases made by either Wilson or Weil, and that both Wilson and Weil acquired title to their respective properties in good faith and for full value without notice that Harmeyer, at the time of their respective purchases, either had or claimed to have any interest in the respective properties which they were purchasing.

The decree of September 22, 1902, was a complete satisfaction and settlement of the alimony decree of July 30, 1901, and that decree so far as it provided for alimony stood released and discharged of record. It is well settled that an entry of satisfaction of a judgment will not be vacated to the prejudice of a bona fide purchaser of property who became such while the judgment appeared by record to be satisfied and discharged. Freeman on Judgments, Sec. 478a; Persons v. Shaeffer, 65 Cal. 79; Taylor v. Ranny, 4 Hill (N. Y.) 619; Page v. Benson, 22 Ill. 484.

Even if it be true that Harmeyer promised plaintiff in error that he, Harmeyer, would pay the interest on a loan on the Kimbark avenue property, and aid her in securing a new loan thereon, or an extension of the old one, such promises could not affect the right of the mortgagee, Isaac Levinson, to foreclose or affect the title which he obtained by means of the foreclosure. All such matters were absolutely determined and settled by the decree of foreclosure. Topping v. Brown, 63 Ill. 348; Springer v. Darlington, 198 Ill. 121; Sielbeck v. Grothman, 248 Ill. 435.

When Wilson purchased the property from Emma

Harmeyer the records showed that she was the absolute owner of the property, and there was nothing of record showing that Henry Harmeyer either had or claimed to have any interest therein.    The testimony of Wilson as to the purchase of the property in good faith and what he paid for the same, and that he had no notice, either actual or constructive, that Henry Harmeyer had or claimed to have any interest in the property, and that he purchased the property for his own personal use, and has since been residing thereon as his home, is not controverted in the evidence.    It follows, therefore, that Wilson is a purchaser in good faith, for full value, and without notice, and is entitled to be fully protected in his title, even though Harmeyer may have been guilty of fraud in his dealings with plaintiff in error.    Dickerson v. Evans, 84 Ill. 451; Grundies v. Reid, 107 Ill. 304.

In our opinion the pendency of the motion in the original divorce proceedings to set aside the settlement decree in that proceeding, did not operate as a *lis pendens* or a constructive notice, for the reason that the court had no jurisdiction in that case to hear and determine the motion.    Bennett on Lis Pendens, Sec. 98; Jones v. Lusk, 2 Metc. (Ky.) 356; Irwin v. Jeffers, 3 Ohio St. 389.

At the time of the purchase of the respective parcels of property by defendants Wilson and Weil, plaintiff in error had been foreclosed from all of her interest in each parcel of property and was a stranger to the title.    She was a party to both foreclosure proceedings and was, therefore, bound in every respect by the decrees and sales and deeds issued thereunder.

It may further be stated that neither Wilson, Weil, Minzesheimer nor Starring were parties to any conspiracy to defraud plaintiff in error.    This is clearly shown without contradiction in the evidence.    While Minzesheimer was an attorney at law, and appeared as an attorney for Harmeyer, and resisted the motion

made by plaintiff in error in the original divorce proceedings to set aside the decree of September 22, 1902, that does not in any wise connect him with the alleged conspiracy. This one appearance was the only connection that Minzesheimer had with the controversy between plaintiff in error and Harmeyer. The attempt, therefore, of plaintiff in error to establish a conspiracy with which Wilson, Weil, Minzesheimer, or Starring, or either of them, were connected, failed completely, and apparently the alleged conspiracy was without the slightest foundation, as shown by the evidence.

The consideration expressed in the deed of Weil was $1 and other good and valuable consideration, and in the deed to Wilson the expressed consideration was $1. This, of itself, casts no suspicion on the transaction. Hazle v. Bondy, 173 Ill. 302. The true consideration may always be shown by parol, even though it is different from that expressed in the deed. Union Mut. Life Ins. Co. v. Kirchoff, 133 Ill. 368; Worrell v. Forsyth, 141 Ill. 22; Howell v. Moores, 127 Ill. 67.

The evidence offered on the hearing showed that full consideration was paid for the conveyance by both Wilson and Weil, and this evidence was uncontradicted.

The equitable titles of Minzesheimer and Starring to the Dearborn street and Armour avenue properties was disclosed in the answer of Weil, filed May 25, 1906, and also on the hearing, but the plaintiff in error did not amend her bill to make Minzesheimer and Starring parties defendant thereto. It is a well-established rule that in suits affecting property held in trust, both the trustee and the equitable owners are necessary parties. McGraw v. Bayard, 96 Ill. 146; Dubs v. Egli, 167 Ill. 514; Gordon v. Johnson, 186 Ill. 18. Plaintiff in error, therefore, is entitled to no relief against Minzesheimer or Starring, or in respect to the Dearborn street or Armour avenue properties.

Defendants in error contend that the plaintiff in error is barred by her gross laches from any relief against them. It appears that the bill to foreclose the Kimbark avenue property was filed February 18, 1902; plaintiff in error filed her answer therein on May 7, 1902, and the decree of foreclosure was entered September 27, 1902, and no redemption having been made from the sale thereunder, a master's deed issued to Levinson, dated February 1, 1904, and was recorded the same day.

The bill to foreclose the Dearborn street and Armour avenue properties was filed April 8, 1902, and plaintiff in error filed her answer therein on May 22, 1902. A decree of foreclosure was entered in the suit on November 20, 1902, and, no redemption having been made from the sale thereunder, a master's deed issued to Ida K. Farber, dated July 12, 1904, and recorded July 16, 1904.

The bill of complaint in the present case was filed April 5, 1906. It thus appears that plaintiff in error was a party defendant to both foreclosure suits and for over three years knew that Harmeyer was not fulfilling his alleged promises and agreements, which, she alleges, constituted such fraud upon her as to entitle her to set aside the settlement decree of September 22, 1902. It is a well-established rule that if a party discovers fraud it is his duty to act with great promptness and disaffirm the transaction. Greenwood v. Fenn, 136 Ill. 146; Naugle v. Yerkes, 187 Ill. 358; Brady v. Cole, 164 Ill. 116.

Wilson did not acquire his title until February 1, 1905, and Weil did not acquire his title until October 17, 1904. The plaintiff in error, with knowledge of all the facts, allowed the settlement decree of September 22, 1902, to remain undisturbed for nearly four years. In our opinion, therefore, she is barred, by her laches, from any relief affecting the rights of the defendants in error, Wilson and Weil. The bill was, therefore, in

our opinion, properly dismissed for want of equity as against the defendants in error, Wilson and Weil.

The question remains as to the propriety of the decree as to defendant in error, Henry Harmeyer. It is contended on behalf of plaintiff in error that while the marriage relation had ceased at the time of the alleged fraudulent transaction averred in the bill, still such influence had been attained over the plaintiff in error and such confidential relations existed between plaintiff in error and defendant in error Harmeyer, that the plaintiff in error was induced to rely upon the promises and representations made by Harmeyer at and prior to the entry of the decree of September 22, 1902, and that the promises and agreements of Harmeyer at that time amounted to fraud upon the plaintiff in error. The question whether there was a fiduciary relation between the parties so that confidence was reposed by the one in the other will depend upon all the facts and circumstances of the particular case. Albrecht v. Hunecke, 196 Ill. 127. In our opinion, there was no such confidential relation between Henry Harmeyer and plaintiff in error during the time of the negotiations for the consent decree, or at the time of the entry thereof. She had been divorced for a year and during that year she had instituted proceeding after proceeding to collect alimony. In our opinion such state of facts tends to show bitterness between the parties and want of confidence rather than any confidential relation, or the repose of any confidence by the one in the other. During the time between the entry of the divorce decree and the entry of the consent decree of September 22, 1902, plaintiff in error had in her employ constantly a solicitor looking after her interests, not only in summary proceedings antagonistic to the defendant Harmeyer, but her interest in the properties involved in the foreclosure suit to which she was defendant, and in a suit against the trustee who held property to secure her alimony. All

the facts and circumstances indicate that there was no confidential relation between Harmeyer and the plaintiff in error.

Plaintiff in error accepted the benefits of the decree of September 22, 1902, and retained them, and does not offer, by her bill, to restore them. A party cannot accept the benefits of a decree without being bound thereby. Holt v. Rees, 46 Ill. 181; King v. King, 215 Ill. 100.

After the plaintiff in error discovered what she claims to have been fraud practiced upon her by defendant in error, Harmeyer, and that he would not and did not keep the alleged promises which she claims to have relied upon at the time that the consent decree was entered, it was her duty at once to take affirmative action. She, however, remained silent and treated the property as her own, and that, in our opinion, constituted a waiver of any objection which she could make to the decree and she became conclusively bound thereby. Greenwood v. Fenn, *supra;* Grymes v. Sanders, 93 U. S. 55; Naugle v. Yerkes, *supra.*

A satisfaction of a judgment entered in pursuance of a compromise, or settlement between parties, will not be vacated at the instance of one of the parties where he has enjoyed the avails of the settlement with full knowledge of the facts, except upon the condition that the party shall return all he has received pursuant to the agreement. Lee v. Vacuum Oil Co., 126 N. Y. 579; Reid v. Hibbard, 6 Wis. 175.

In our opinion, the promises and agreements of defendant in error alleged to have been made at the time that the consent decree of September 22, 1902, was entered, were not false representations. The plaintiff in error stated in her testimony that she relied on the promises and agreements of the defendant in error. She testified as follows:

"Q. What did he say he would do for you? A. He would renew the loans, and see that I redeemed the

property, and see that I was supported properly and had a good income if I would do as he agreed to do with me.

Q. I will ask you whether those conversations and the various promises between yourself, that Henry Harmeyer made to you, had any influence on you? A. Certainly they did, and I made the settlement on those promises, believing he would keep them.

Q. Did you rely on his promises or not? A. Yes, sir, I certainly did.''

The making of promises which are not kept will not sustain a bill to set aside a contract or decree. Krieger v. Krieger, 120 Ill. App. 634, and cases there cited.

We think the evidence adduced on the hearing does not show that plaintiff in error was defrauded by the defendant in error, Harmeyer, in the entry of the decree of September 22, 1902. Giving to the evidence the most favorable construction possible to the plaintiff in error, it only tends to show that in order to induce plaintiff in error to consent to the entry of the settlement decree, Harmeyer made to plaintiff in error certain promises and agreements which he has not performed, and which, at the time the promises and agreements were made, he did not intend to perform. This is not fraud in law, nor does it afford a ground for relief in equity. Murphy v. Murphy, 189 Ill. 360; Haenni v. Bleisch, 146 Ill. 262; People v. Healy, 128 Ill. 9; Commercial Accident Co. v. Bates, 176 Ill. 194.

In our opinion the evidence fails to show that plaintiff in error is entitled to have the settlement decree of September 22, 1902, set aside, and the bill was properly dismissed for want of equity as to defendant in error, Harmeyer. The decree is, therefore, affirmed.

*Affirmed.*