(No. 22182.—)
HELEN C. MANSON *vs.* GUNHILD BERKMAN *et al.*—(HELEN
C. TEUTHORNE *et al.* Appellants, *vs.* THE VILLAGE OF
WINNETKA, Appellee.)

*Opinion filed February 23, 1934—Rehearing denied April 10, 1934.*

ENOCH J. PRICE, JACOB J. BECKER, and OWEN N. PRICE, for appellants.

TOLMAN, CHANDLER & DICKINSON, (FREDERICK DICKINSON, and WALTER V. SCHAEFER, of counsel,) for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Helen C. Manson (now Helen C. Teuthorne) filed a bill in the circuit court of Cook county for partition of certain real estate in the village of Winnetka, against Gunhild Berkman, the village of Winnetka, the Winnetka Park District, and other defendants designated as unknown owners. From a decree dismissing the original bill for want of equity and granting the relief prayed by an amended cross-bill filed by the village of Winnetka, Helen C. Teuthorne and Gunhild Berkman have prosecuted an appeal to this court.

The property in controversy is a triangular piece of land containing about one-half acre located in the village of Winnetka. At the time the bill was filed, November 24, 1926, the land was being used as a park by the Winnetka Park District. The bill alleges that the complainant and Berkman are tenants in common of the property, each owning an undivided one-half thereof, and that the village of Winnetka claims an interest in the property under a certain

quit-claim deed from Sarah H. Lieb to the village, but that said deed is void and should be set aside as a cloud on the title.

The village filed a cross-bill, which sets up two claims of title. One is based on the quit-claim deed from Sarah H. Lieb, grantee of Robert E. Jenkins, assignee in bankruptcy of Simeon Mears and E. Ashley Mears. The other is based on twenty years' adverse possession prior to the filing of the original bill. The amended answers of the village and the park district set up the same matters as the cross-bill, and also the defense of *laches*. It was stipulated that none of the tax deeds mentioned in the pleadings were sufficient to convey title, and the successful litigant will reimburse the other party for all moneys expended in purchasing such tax titles, with penalties, interest and costs.

It is conceded that the evidence failed to establish title by twenty years' adverse possession prior to the filing of the original bill, but the court found that when the cross-bill was filed, January 27, 1930, appellee was in a position to successfully assert title by reason of twenty years' adverse possession. The beginning of the suit for partition arrested the running of the statute as to all of the defendants, and a lapse of time during the pendency of the suit could not perfect a title in cross-complainants. (*Woods* v. *Glos*, 257 Ill. 125.) The finding of the decree that a limitation had matured subsequently to the filing of the bill but prior to the filing of the amended bill is erroneous. The issues are narrowed to a consideration of the record titles of the respective parties and the question of *laches*.

It was stipulated by the parties that both appellants and appellee claim title by virtue of a warranty deed from Edgar F. Brown to Artemas Carter dated October 2, 1868, recorded October 19, 1871. Appellants' chain of title is as follows: Warranty deed from Carter to Simeon Mears and E. Ashley Mears dated September 11, 1873;

quit-claim deed from Simeon Mears to E. Ashley Mears dated September 23, 1876, recorded October 10, 1876; warranty deed from E. Ashley Mears, Margaret B. Mears, his wife, and Dothee C. Mears, wife of Simeon Mears, to Lizzie D. Mears, dated December 19, 1876, recorded December 20, 1876; quit-claim deed from Eliza (Lizzie) Mears to Margaret B. Mears dated and acknowledged December 23, 1879, recorded June 21, 1882; quit-claim deed from the heirs-at-law of Margaret B. Mears to Daniel Cummings dated February 15, 1921, recorded April 22, 1921, and *mesne* conveyances from Cummings to appellants, the deed to appellants being dated November 18, 1926. Simeon Mears was the father of E. Ashley Mears and Lizzie D. Mears. Margaret B. Mears was the wife of E. Ashley Mears.

On November 7, 1877, Simeon Mears and E. Ashley Mears were co-partners, and, being largely indebted, they filed voluntary petitions in bankruptcy. The property in controversy was not scheduled as an asset. Amended schedules were filed on January 20, 1878, which stated that Margaret B. Mears held title to such real estate under an unrecorded deed from Lizzie D. Mears and that the failure to schedule the land was through a mistake, and that Margaret B. Mears stands ready to convey all interests of the bankrupts to the assignee or his order upon the direction of the court. The deed from Lizzie D. Mears to Margaret B. Mears was not executed until December 23, 1879, subsequent in time to the filing of the amended schedules. Robert E. Jenkins, assignee in bankruptcy, sold several tracts of land, including the real estate here involved, at public sale on April 28, 1881, to Sarah H. Lieb, for a consideration of $2.75. She conveyed to appellee by quit-claim deed dated August 20, 1915, recorded September 8, 1915.

Appellee urges that all the deeds among the members of the Mears family were fraudulent and void because they

were made to hinder and delay creditors. The deed from Simeon Mears to E. Ashley Mears, and the deed from him to his sister, were made approximately a year prior to the filing of the petitions in bankruptcy. Neither the creditors nor the assignee ever requested Margaret B. Mears to make a deed for the benefit of the bankrupt estates.

Appellee insists that Margaret B. Mears had no adverse interest to assert against the assignee in bankruptcy. There is no showing that either Lizzie D. Mears or Margaret B. Mears was in any way a party to or ratified the recitals in the amended bankruptcy schedules or that either of them had any knowledge of such recitals. The deed to Margaret B. Mears was executed after the amended schedules were filed, and was recorded in June, 1882, after the sale by the assignee. These acts were assertions of ownership and show that she claimed an interest adverse to the assignee and his grantee. No assault was ever made upon Margaret B. Mears' title until more than forty years had elapsed after her deed was recorded. There is nothing in the record to show she had notice of any infirmity in her title. A grantee is presumed to have notice of any defect of title apparent on the face of his title papers but is not required to look for latent defects in the chain of conveyances when they purport to be made by the proper persons. (*Dickerson* v. *Evans,* 84 Ill. 451.) A conveyance received in good faith, without notice of the fraud of predecessors in title, conveys the title free from any taint of such fraud. (*Dickerson* v. *Evans, supra; Spicer* v. *Robinson,* 73 Ill. 519.) The recitals made by the bankrupts in their amended schedules derogatory to the deeds previously executed by them cannot be received to impeach the title of their grantees. (*McGinnis* v. *Jacobs,* 147 Ill. 24; *Corder* v. *Corder,* 124 id. 229.) If there was actual fraud in the transactions among the members of the Mears family it is not apparent on the face of the record, and there is no showing that any of their subsequent grantees,

including appellants, had any knowledge of such alleged fraud, either actual or constructive.

The deed by the assignee in bankruptcy without having obtained title for the benefit of the bankrupts' estate conveyed nothing to his grantee, Mrs. Lieb, and her deed to appellee vested no title in the village. (*Wilson* v. *Dresser,* 152 Ill. 387; *Cramer* v. *Wilson,* 202 id. 83, affirmed in 195 U. S. 408, 49 L. ed. 256; *Gifford* v. *Helms,* 98 U. S. 253, 25 L. ed. 59; *Wisner* v. *Brown,* 122 id. 214, 30 L. ed. 1205.) Appellants, who have an unbroken chain of title, were under no obligation to bring suit to set aside recorded deeds not connected with their chain of title. The record of such deeds did not constitute notice to appellants of their existence. *Allison* v. *White,* 285 Ill. 311; *Thorpe* v. *Helmer,* 275 id. 86; *Rohde* v. *Rohn,* 232 id. 180; *Carbine* v. *Pringle,* 90 id. 302.

In determining whether *laches* will bar an action, the rule is that equity follows the law, and it is only when the delay is accompanied by some other element rendering it inequitable to permit the owner to assert his title that *laches* will bar his right within the statutory limitation period. (*Compton* v. *Johnson,* 240 Ill. 621; *Stowell* v. *Lynch,* 269 id. 437; *Thomas* v. *Chapin,* 274 id. 95.) A situation of that nature is not presented by the facts in this case. Until a few years ago—and the record does not disclose just when—the premises were vacant and unoccupied. They were covered with brush and weeds. Paths led through them, and they were used only as a commons or playground by children. Appellee occasionally cut the underbrush and grass. It planted some shrubbery and placed a one-strand chain fence around the land in 1922. It has never placed any lasting and valuable improvement on the property. The evidence does not show any valid reason for preventing appellants from asserting their title against the claim of the village. However, they must make reimbursement for taxes and legal costs according to the stipulation therefor and

26

as provided by section 224 of "An act entitled 'An act for the assessment of property and for the levy and collection of taxes.' "

The decree of the trial court is reversed and the cause is remanded, with directions to enter a decree in conformity with the views herein expressed.

*Reversed and remanded, with directions.*